613 So.2d 1179 (1992)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
v.
Tommy J. DAVIS and Gladys B. Davis.
No. 89-CA-1051.
Supreme Court of Mississippi.
December 31, 1992.
Rehearing Denied March 18, 1993.
Wylene W. Dunbar, Holcomb Dunbar Connell Chaffin & Willard, Oxford, for appellant.
Bill Waller, Sr., Waller & Waller, Jackson, Carolyn Dees Gerity, Powell, OH, for appellees.
Before DAN M. LEE, P.J., and PITTMAN and BANKS, JJ.
PITTMAN, Justice, for the Court:
On September 30, 1988, Tommy J. Davis and Gladys B. Davis as the legal representatives of Tammy Jane Davis, the decedent, filed a complaint in the Circuit Court of Holmes County against Bradley E. King, a minor, and State Farm Mutual Automobile Insurance Company (State Farm) seeking to recover damages under Miss. Code Ann. § 11-7-13 (Supp. 1981) for the wrongful death of their daughter, Tammy Jane Davis. The lower court granted a partial summary judgment, ruling that the plaintiffs were entitled to an award in the amount of $35,000 based upon the uninsured motorist coverage afforded by two State Farm policies issued to King's mother and stepfather, Elizabeth and Charlie Holeman.
State Farm has appealed to this Court with supersedeas. We reverse and render judgment in favor of State Farm because the Davises are only entitled to uninsured motorist benefits from their own policies *1180 and/or the policy covering the accident vehicle.

I.
On November 11, 1987, Tammy Jane Davis was a passenger in a 1987 Nissan pick-up truck driven by Bradley E. King. An accident occurred resulting in Tammy's death. The Nissan pick-up truck was owned by Elizabeth Holeman, King's mother, and at the time of the accident, the truck was insured by a policy issued to Elizabeth Holeman by State Farm.
The policy covering the accident vehicle provided uninsured motor vehicle (UM) coverage with maximum "each person" limits of $10,000. The bodily injury liability limits applicable to the wrongful death claim arising out of Tammy's death were $25,000. Tammy was also insured under three other State Farm policies issued to her father Tommy J. Davis. Each of these policies provided UM coverage of $10,000. All of the UM coverage provided by these four policies was paid by State Farm.
The Davises, however, maintained that they were entitled to the UM coverage provided by two other State Farm policies issued to Charlie and Elizabeth Holeman. One of the policies covered a 1983 Chevrolet pick-up and provided $10,000 of UM coverage. The other policy covered a 1988 Pontiac and provided $25,000 of UM coverage. These two policies were the only policies at issue.
State Farm filed a motion for partial summary judgment requesting that the lower court hold that the Davises were not entitled to recover any UM benefits under the policies at issue. The lower court, however, ruled in favor of the Davises and awarded them $35,000 in UM benefits as provided by the two policies at issue.

II.
In order to recover the UM benefits provided by an insurance policy, the claimant must first prove that he/she is an "insured" under either the insurance policy and/or the UM statute. Gillespie v. Southern Farm Bureau Casualty Ins. Co., 343 So.2d 467, 471 (Miss. 1977). The Holemans' State Farm policies contain the same definition of an "insured" for purposes of the uninsured motor vehicle coverage:
Who Is An Insured  Coverages U and U1

Insured  means the person or persons covered by uninsured motor vehicle coverage.
This is:
1. you;

2. your spouse;

3. your relatives; and
4. any other person while occupying:

a. your car, a temporary substitute car, a newly acquired car, or a trailer attached to such a car. Such vehicle has to be used within the scope of the consent of the first person named in the declarations or that person's spouse; or
b. a car not owned by you, your spouse or any relative or a trailer attached to such a car. It has to be driven by the first person named or that person's spouse and within the scope of the owner's consent.
Such other person occupying a vehicle used to carry persons for a charge is not an insured.

5. any person entitled to recover damages because of bodily injury to an insured under 1 through 4 above.
The UM statute contains the following definition:
The term "insured" shall mean the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies, or the guest in such motor vehicle to which the policy applies, or the personal representative of any of the above. The definition of the term "insured" given in this section shall apply only to the uninsured motorist portion of the policy.
*1181 Miss. Code Ann. § 83-11-103(b) (Supp. 1980).
According to these definitions, Tammy is not an "insured" under the policies at issue in this appeal because she was not a guest passenger in either the 1983 Chevrolet pick-up or the 1988 Pontiac. Tammy is an "insured" only under the policy covering the accident vehicle.
The Davises, however, contend that they are entitled to stack the coverage provided under these policies pursuant to this Court's decision in Wickline v. United States Fidelity & Guaranty Co., 530 So.2d 708 (Miss. 1988). In Wickline, Stacy Wickline was a guest passenger in a car owned by Mills Carter, Jr., and operated by Mills Carter, III. Carter hit a parked vehicle resulting in the death of Wickline. The Carter car was covered by a policy issued by U.S.F. & G. which provided liability coverage of $10,000 per person and $20,000 per accident and UM coverage of $10,000 per person and $20,000 per accident. The policy covered a total of four vehicles owned by Mills Carter, Jr., including the accident vehicle, and Carter paid four separate premiums. Stacy Wickline was also insured under two State Farm insurance policies issued to the Wicklines with UM coverage of $10,000 per person and $20,000 per accident on each policy.
In determining whether Carter's vehicle was an "uninsured motor vehicle," this Court looked to Miss. Code Ann. § 83-11-103(c) (Supp. 1980) which provides:
The term "uninsured motor vehicle" shall mean:
... .
(iii) An insured motor vehicle, when the liability insurer of such vehicle has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist coverage... .
This Court determined that the Carter vehicle was uninsured. In comparing the available UM coverage with the amount of liability insurance available, the amount of UM coverage on the accident vehicle ($10,000) and the amount of UM coverage on the Wicklines' policies ($20,000) were added together ($30,000) and compared to the amount of liability insurance available on the accident vehicle ($10,000).
Once it was determined that the Carter vehicle was uninsured, the Court had to determine the amount of UM coverage that the Wicklines were entitled to recover from the uninsured motorist. This Court held that the Wicklines were entitled to recover the limit of UM coverage for each car insured in the policy.
[T]he operative provisions of the Mississippi Uninsured Motorists Act have been declared as a matter of positive law to provide that all classes statutory insureds may recover of the UM insurer all amounts he or she may be entitled to recover as damages from the uninsured motorist, limited only by the limits of UM coverage multiplied by the number of vehicles insured in the policy.
Wickline, 530 So.2d at 715.
This Court also discussed its policy of liberally construing the Uninsured Motorist Act to provide compensation.
On numerous occasions this Court has observed that uninsured motorist insurance is designed to provide innocent injured motorists a means of compensation for injuries which they receive at the hands of an uninsured motorist, ... and this Court has further noted that the uninsured motorist Act must be liberally construed to achieve this purpose... . In addition to determining the statutory purpose of the Act, this Court has looked to the policy in question and construed ambiguous provisions against the insured and in favor of the injured party to accomplish the statutory purpose... . Another rule of construction applied in our cases has been to hold unenforceable any policy provision that seeks to reduce the coverage required by the statute.
Wickline, 530 So.2d at 711-12 (citations omitted).
In further discussing the stacking issue, this Court explained its reasoning as follows:

*1182 Stacking is firmly imbedded in our uninsured motorist law. The sort of stacking here sought, i.e., stacking multiple coverages within a single policy, has been mandated... . As with other types of stacking, the rationale offered is that multiple premiums are paid and multiple (stacked) coverages should be available. However, what is important is the fact that stacking has become a positive gloss upon our Uninsured Motorist Act.
No one would question stacking were Mills Carter, Jr., the named insured, the plaintiff... . Are Stacy Wickline's personal representatives insureds of any less status than Carter? No, not if the statutory definition be respected. But it may be argued that stacking is only just in Carter's case because he paid the multiple premiums and this entitles him to the multiple coverages. Stacy Wickline paid no premiums. The point loses force when it is remembered that no third party beneficiaries give the consideration that yields an obligation he may of right enforce. Here Mills Carter, Jr., paid the premiums for the benefit of all insureds, including the statutory UM third party beneficiary Stacy Wickline. The advantage to U.S.F. & G. from denying stacking here would be economically identical to that condemned in so many other contexts.
Wickline, 530 So.2d at 714-15 (citations omitted).
No one would question whether Carter could stack the UM coverage on his four automobiles. Likewise, in the case at hand, Bradley King would also be able to stack the UM coverage provided by all three policies issued to the Holemans.
Wickline, however, is distinguishable because Carter's four cars were all covered under the same policy. Stacy Wickline was an "insured" under the Carter policy covering all four vehicles. In the case at hand, the Holemans' cars are all covered under separate policies. Although all three of the policies covering the Holeman vehicles are the same form, number 9824.1, Tammy is an "insured" only under the policy covering the accident vehicle.
This Court's holding in Wickline was further analyzed in Thiac v. State Farm Mutual Automobile Insurance Co., 569 So.2d 1217 (Miss. 1990). In Thiac, this Court was presented the question of "whether a guest passenger while occupying a vehicle involved in an accident, can also benefit from uninsured motorist insurance carried by the `named insured' on another vehicle not involved in the accident." Id. at 1218. Rachael Thiac was a guest passenger in a Porsche automobile driven and owned by Robert Ellzey. Due to Ellzey's negligence, the automobile hit a tree. Ellzey was killed and Thiac sustained serious injuries.
The Porsche was insured under a State Farm policy providing liability limits for bodily injury of $25,000 per person, and $50,000 per accident. It provided identical UM limits. Ellzey also owned a Datsun which was covered under a separate State Farm policy providing UM limits of $10,000 per person and $20,000 per accident. Thiac had no automobile insurance of her own.
Thiac argued that she was entitled to stack the UM coverage of the Porsche policy and the UM coverage of the Datsun policy to meet the definition of "uninsured motor vehicle." Without stacking the UM coverage of the Datsun policy, the UM coverage of the Porsche policy alone would not exceed the liability limits.
This Court, however, in recognizing its previous decision in Wickline, held that Thiac was not entitled to stack the UM coverage under the Datsun policy to establish that the accident vehicle qualifies as an "uninsured motor vehicle."
[F]or the purpose of establishing whether an insured host vehicle is, in fact, underinsured, we look no further than the guest passenger's own coverage and the coverage on the host vehicle.

Thiac, 569 So.2d at 1221.
Unlike Thiac, however, Tammy Davis does have additional UM coverage other than that provided by the accident vehicle, and as a result, the accident vehicle qualifies as an "uninsured motor vehicle." Miss. Code Ann. § 83-11-103(c)(iii) (Supp. 1980). The question before the Court now *1183 is whether the Davises are entitled to the UM coverage provided by the other two policies issued to the Holemans once the requirements of § 83-11-103(c)(iii) have been met.
In Thiac, this Court noted that the stacking of policies for the purpose of determining whether a vehicle was underinsured was different from the stacking of policies for the purpose of recovering damages.
This Court distinguishes the different approaches we took in Wickline concerning stacking for the purpose of establishing the insured vehicle as underinsured, as opposed to stacking for the purposes of recovering damages.
In Wickline, in determining that the host vehicle was underinsured, the trial judge did not allow the Wicklines to stack the other four vehicles covered under the host vehicle's policy, but looked initially to their own coverage ($20,000.00) and stacked that with the UM coverage ($10,000.00) on the host vehicle only. On the other hand, once it was established that the host vehicle was underinsured, this Court overruled the trial court and allowed the Wicklines to stack all vehicles under the host driver's policy, in addition to their own State Farm policies, to recover damages.
Thiac, 569 So.2d at 1220.
This Court stated that the fact that the cars in Thiac were insured under separate policies, however, was not the determining factor.
Thiac cannot convert Ellzey's coverage on his Datsun into coverage for Thiac for the purpose of classifying Ellzey as an un[der]insured motorist.
It is the legislative intent behind § 83-11-103(c)(iii), not the fact that the Datsun was insured by a separate State Farm policy, which dictates that Thiac should not be allowed to stack Ellzey's Datsun policy to qualify the Porsche as underinsured.
Thiac, 569 So.2d at 1221.
Although a review of this Court's decision in Thiac might imply that stacking of the UM coverage provided by the Datsun policy would have been allowed if Ellzey's car met the definition of "uninsured motor vehicle," this question was never addressed and no such interpretation was intended. Thiac only clarifies this Court's holding in Wickline as to how to determine if a vehicle is uninsured when the accident vehicle is covered by a multi-vehicle policy.

III.
Although the Wicklines and the Davises appear to be similarly situated, the circuit judge erred in granting summary judgment in favor of the Davises. The Wicklines were allowed to recover UM benefits for four cars owned by Carter. Their daughter was a guest passenger in only one of those cars, but Stacy Wickline was an "insured" under the policy covering all four cars. Tammy Davis, on the other hand, was a guest passenger in only one of the three vehicles owned by the Holemans, and she was an "insured" only under the policy covering the accident vehicle. The Davises are only entitled to stack the UM coverage provided by the policies in which Tammy met the definition of an "insured" either under the terms of the policy and/or the UM statute. Gillespie, 343 So.2d at 471. Thus, the Davises are only entitled to receive the UM coverage provided by their own policies and the policy covering the accident vehicle.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, and BANKS, JJ., concur.
McRAE, J., dissents with separate written opinion.
ROBERTS, J., not participating according to supreme court internal rules.
McRAE, Justice, dissenting:
Because I think the majority incorrectly distinguishes the facts in this case from those in Wickline v. United States Fidelity & Guaranty Co., 530 So.2d 708 (Miss. 1988), I dissent. In finding that the Davises are only entitled to UM benefits from their own policies and/or the policy covering the accident vehicle, the majority steps away from our long tradition of viewing *1184 UM coverage liberally from the perspective of the injured insured and opens the door for insurance companies to circumvent the intents and purposes of the UM statute by encouraging them to write only single vehicle policies.
Whether UM coverage is available is a matter to be decided from the perspective of the injured insured. State Farm Mutual Automobile Insurance Co. v. Nester, 459 So.2d 787, 790 (Miss. 1984); Harthcock v. State Farm Mutual Automobile Insurance Co., 248 So.2d 456 (Miss. 1971). We have long espoused a policy of liberally construing the Uninsured Motorist Act in favor of compensation. As we stated in Wickline:
On numerous occasions this Court has observed that uninsured motorist insurance is designed to provide innocent injured motorists a means of compensation for injuries which they receive at the hands of an uninsured motorist, see, e.g. Harthcock v. State Farm Mutual Ins. Co., 248 So.2d 456, 460-61 (Miss. 1971), and this Court has further noted that the uninsured motorist Act must be liberally construed to achieve this purpose. Stevens v. U.S.F. & G. Co., 345 So.2d 1041 (Miss. 1977); Parker v. Cottonbelt Ins. Co., Inc., 314 So.2d 342 (Miss. 1975); Lowery v. State Farm Mutual Automobile Ins. Co., 285 So.2d 767 (Miss. 1973); Hodges v. Canal Ins. Co., 223 So.2d 630 (Miss. 1969). In addition to determining the statutory purpose of the Act, this Court has looked to the policy in question and construed ambiguous provisions against the insured and in favor of the injured party to accomplish the statutory purpose. GEICO v. Brown, [446 So.2d 1002 (Miss. 1984)]; Hartford Accident & Indemnity Co. v. Bridges, 350 So.2d 1379 (Miss. 1977); Pearthree v. Hartford Accident & Indemnity Co., 373 So.2d 267 (Miss. 1979). Another rule of construction applied in our cases has been to hold unenforceable any policy provision that seeks to reduce the coverage required by the statute. Lowery v. State Farm Mutual Automobile Insurance Co., 285 So.2d 767 (Miss. 1973).
Wickline, 530 So.2d at 711-12.
We likewise have recognized that when multiple vehicles are owned by an insured, aggregating or stacking of the UM coverages on those vehicles is permitted to allow the insured to recover the total UM benefits for which premiums have been paid. In Nester, as in the case sub judice, where the claimant had four separate policies on which he had paid four separate premiums, we affirmed the trial court's findings that the policies could be aggregated or stacked. Even State Farm conceded that each of the policies was applicable and enforceable. Id. at 793. In Government Employees Insurance Co. v. Brown, 446 So.2d 1002 (Miss. 1984), we reaffirmed the rule that "where an insured purchases more than one policy and pays the premium on more than one policy, that insured is entitled to collect on all such policies." Nester, 459 So.2d at 793. However, in Pearthree v. Hartford Accident & Indemnity Co., 373 So.2d 267 (Miss. 1979), where the record was unclear as to whether separate premiums had been paid for uninsured motorist coverage on two automobiles, we stated that "charging a separate premium would not necessarily determine the propriety of aggregating, although it is an element to be considered with other aspects of the case." The Pearthree Court allowed the aggregation or stacking of the owners' policies. As we further discussed in Wickline:
Stacking is firmly imbedded in our uninsured motorist law. The sort of stacking here sought, i.e., stacking multiple coverages within a single policy, has been mandated in Brown [Brown v. Maryland Casualty Co., 521 So.2d 854 (Miss. 1987)], Pearthree [Pearthree v. Hartford Accident & Indemnity Co., 373 So.2d 267 (Miss. 1979)] and Hartford Accident & Indemnity Co. v. Bridges, 350 So.2d 1379 (Miss. 1977). See also St. Arnaud v. Allstate Insurance Co., 501 F. Supp. 192 (S.D.Miss. 1980). As with other types of stacking, the rationale offered is that multiple premiums are paid and multiple (stacked) coverages should *1185 be available. However, what is important is the fact that stacking has become a positive gloss upon our Uninsured Motorist Act.
No one would question stacking were Mills Carter, Jr., the named insured, the plaintiff. A combined reading of Brown, Pearthree and Bridges establishes as much. Are Stacy Wickline's personal representatives insureds of any less status than Carter? No, not if the statutory definition be respected. But it may be argued that stacking is only just in Carter's case because he paid the multiple premiums and this entitles him to the multiple coverages. Stacy Wickline paid no premiums. The point loses force when it is remembered that no third party beneficiaries give the consideration that yields an obligation he may of right enforce. Here Mills Carter, Jr., paid the premiums for the benefit of all insureds, including the statutory UM third party beneficiary Stacy Wickline. The advantage to U.S.F. & G. from denying stacking here would be economically identical to that condemned in so many other contexts.
Wickline, 530 So.2d at 714-15.
In Cossitt v. Nationwide Mutual Insurance Co., 551 So.2d 879 (Miss. 1989), we further allowed aggregation or stacking of uninsured motorist coverage on three buses owned by a church, noting that while the case involved involved a business or commercial policy,
It is a matter of common knowledge that many individual have from three to seven vehicles, or more, on one policy for family use. The policy is not considered to be a fleet policy.
Id. at 884.
We have recognized that UM protection is personal to the insured, that is, it is coverage for persons, not for vehicles. Nester, 459 So.2d at 793, quoting Appleman, Insurance Law and Practice § 5080. Thus, in Wickline, the Wicklines were allowed to recover UM benefits for four vehicles owned by the Carters, although their daughter was a guest passenger in only one of the cars. Although Stacy Wickline was an insured under the single policy covering all four cars, she did not meet the definition of insured with respect to the three vehicles not involved in the accident. Likewise, Tammy Davis was a guest passenger in only one of the three vehicles owned by the Holemans. Like the Carters, the Holemans paid premiums on all of their vehicles for the benefit of all insureds just as if the there had been a single policy. There is no question that Bradley King could benefit from the stacking of his mother and stepfather's three policies. Why then should the beneficiaries of another insured, Tammy Davis, be so denied? Had the Holemans insured their vehicles under one policy, stacking clearly would be permissible. Merely because three pieces of paper are involved rather than only one should not change the outcome anymore than it changes the amount of the premium paid.
To suggest that because the Holeman's three vehicles are outside the realm of stacking merely because they were carried on three separate State Farm policies rather than on a single policy invites insurance companies to thwart the principal of aggregating or stacking by refusing to issue multi-vehicle policies. Accordingly, I dissent.