634 So.2d 108 (1994)
Anthony Greg MEADOWS, Alfred Allen Meadows, Jeffrey Jetton and Gloria Jetton
v.
MISSISSIPPI FARM BUREAU INSURANCE COMPANY.
No. 91-CA-00437.
Supreme Court of Mississippi.
March 17, 1994.
Tommy Dulin, Dulin & Dulin, Gulfport, Jerry Read, Biloxi, for appellants.
Rodney D. Robinson, Allen Cobb & Hood, Harry R. Allen, Gulfport, for appellee.
*109 Before DAN M. LEE, P.J., and BANKS and JAMES L. ROBERTS, Jr., JJ.
JAMES L. ROBERTS, Jr., Justice, for the Court:
In this stacking case, the parties stipulate the facts, and the issue, as framed by appellants, is "whether Jeffrey Jetton and Anthony Meadows are entitled to `stack' five uninsured motorist coverages sold by Mississippi Farm Bureau Insurance Company to the owner of the vehicle in which they were injured as guest passengers." The issue as framed by Mississippi Farm Bureau is "whether, under Mississippi law, guest passengers  who are not resident relatives of driver's household  qualify as `insureds' for purposes of uninsured motorist coverage under separate policies of insurance issued to the driver's household, which policies cover solely vehicles which were not involved in the accident at issue."
Anthony Greg Meadows and Jeffrey Jetton were guest passengers in a 1972 Chevrolet pickup owned by Marcus Blackwell and driven by his son, Malcolm Blackwell. The guest passengers and the driver, all minors, sustained serious injuries in an automobile accident caused by the negligence of an uninsured motorist. In addition to the 1972 Chevrolet truck, Marcus had insured with Mississippi Farm Bureau five additional vehicles. Farm Bureau claims that each vehicle is insured by a separate policy which provides uninsured motorist coverage in the amount of $10,000/$20,000. Mississippi Farm Bureau interplead the $20,000 uninsured motorist coverage on the 1972 truck, and the three claimants agreed to divide that amount equally. However, Mississippi Farm Bureau denied uninsured motorist policy stacking to the guest passengers.
The policy provisions at issue in this case are not ambiguous, violative of public policy arguments or in conflict with Miss. Code Ann. § 83-11-103(b). The circuit court correctly applied the policy provisions and concluded that Meadows and Jetton were not "insureds" under the uninsured motorist provisions of these Mississippi Farm Bureau policies. We affirm the lower court's ruling of summary judgment in favor of Mississippi Farm Bureau dismissing the claims of Anthony Greg Meadows and Jeffrey Jetton.

I. WHETHER THE PLAINTIFFS BELOW ARE ENTITLED TO "STACK" FIVE UNINSURED MOTORIST COVERAGES SOLD BY MISSISSIPPI FARM BUREAU INSURANCE COMPANY TO THE OWNER OF THE VEHICLE IN WHICH THEY WERE INJURED AS GUEST PASSENGERS.

FACTS
Mississippi Farm Bureau Insurance Company insured a 1972 Chevrolet truck owned by Marcus Blackwell and operated by his minor son, Jonathan Malcolm Blackwell. The truck was involved in a collision with an uninsured motorist on June 27, 1989, in Harrison County. The driver and the two minor passengers, Jeffrey Jetton and Anthony Meadows, were seriously injured. The uninsured motorist coverage on the 1972 truck provided limits in the amount of $10,000/$20,000. That amount was interplead into the Chancery Court of Stone County and, by agreement, divided equally among the three minors. Determination of the uninsured motorist coverage question was made by the Circuit Court following transfer by the chancellor. Marcus Blackwell had in effect five additional policies of insurance with Mississippi Farm Bureau covering five other vehicles as follows:
1. Policy No. A058322, covering a 1981 Chevrolet pickup to Marcus Blackwell, as named insured;
2. Policy No. A059396, covering a 1976 Dodge truck to Blackwell & Sons, as named insured;
3. Policy No. A145736, covering a 1975 Ford truck to Blackwell & Sons, Inc., as named insured;
4. Policy No. A145735, covering a 1976 trailer to Blackwell & Sons, Inc.;
5. Policy No. A392140, covering a 1985 Oldsmobile sedan issued to Blackwell & Sons, Inc.
Each policy provided uninsured motorist coverage limits of $10,000/$20,000.
Under these five separate policies, Mississippi Farm Bureau paid to Jonathan Malcolm *110 Blackwell the sum of $50,000 representing the maximum amount of uninsured motorist coverage available by stacking the coverage of the five policies. The two minor passengers claimed that they also were entitled to stack the uninsured motorist coverage on other vehicles owned by Blackwell, however, Mississippi Farm Bureau denied the coverage claiming they were not named insureds under those policies.

LAW
The specific language of the policies is similar to the Allstate policy in State Farm Mutual Automobile Insurance Company v. Davis, 613 So.2d 1179 (Miss. 1992).
The language is the same in each of the six Mississippi Farm Bureau policies in question:
(a.) The unqualified word "Insured" means:
(1.) The first named insured as stated in the declaration of the policy and while residents of the same household, his spouse and relatives of either.
(2.) Any permissive user or guest while occupying an insured automobile.

"Insured Automobile" shall not include:
(iv.) For Permissive users or guests, an automobile other than the one involved in the accident, that is owned, operated or used by the named insured. (Emphasis added)
It is uncontradicted that neither Jetton nor Meadows is a named insured, the spouse of a named insured, or a resident relative of the Blackwell household. They were occupants of the 1972 Chevrolet pickup covered by Policy No. A277154 at the time of the automobile collision.
Jetton and Meadows argue this policy language is ambiguous: "(2) Any permissive user or guest while occupying an insured automobile." (Emphasis added). Use of the word "an" instead of the word "the," they say, indicates an intention to afford insurance coverage to guest passengers for more than the one vehicle which they were occupying. They argue that insurance contracts are contracts of adhesion, drafted by the insurance company, and the that ambiguity should be interpreted in favor of coverage and against the insurance company. They conclude Mississippi Farm Bureau issued, in effect, just one policy covering the six vehicles because the form insurance policy was the same in all and only the declaration pages were different, varying in the name of the insured and the particular motor vehicle insured. The amount of uninsured motorist coverage available under each of the six policies was the same minimum limits of $10,000/$20,000.
Previously this Court has recognized that Miss. Code Ann. § 83-11-103(b) recognizes two categories of insured:
Class 1: The named insured and, while resident of the same household, the named insured's spouse and relatives of either, while in a motor vehicle or otherwise.
Class 2: A guest passenger in such motor vehicles to which the policy applies.
See Harris v. Magee, 573 So.2d 646, 656 (Miss. 1990).
Those in the first category, or Class 1 insureds, are given broad coverage including protection while they are in a motor vehicle or otherwise.
Those in Class 2 are granted restrictive rights and are afforded coverage only by virtue of their occupancy of the particular vehicle at the time of the accident. See Aetna Casualty & Surety Company v. Barker, 451 So.2d 731, 734 (Miss. 1984); Lowery v. State Farm Mutual Automobile Insurance Company, 285 So.2d 767, 771 (Miss. 1973).
In State Farm Mutual Automobile Insurance Company v. Davis, 613 So.2d 1179 (Miss. 1992), this Court held similar policy provisions were not violative of the uninsured motorist statute and, therefore, valid:
Tammy Davis, on the other hand, was a guest passenger in only one of the three vehicles owned by the Holemans, and she was an "insured" only under the policy covering the accident vehicle. The Davises are only entitled to stack the UM coverage provided by the policies in which Tammy met the definition of an "insured" either under the terms of the policy and/or the UM statute. (citation omitted). Thus, the Davises are only entitled to receive the UM coverage provided by their own policies *111 and the policy covering the accident vehicle.
Davis, 613 So.2d at 1183. [Emphasis added]. Meadows and Jetton are Class 2 "insureds" limited to the uninsured motorist coverage on the 1972 Chevrolet truck in which they were passengers at the time of the automobile collision with the uninsured motorist. They are not "insured" under the five policies insuring additional vehicles owned by Blackwell. State Farm Mutual Automobile Insurance Company v. Davis, 613 So.2d 1179, 1183 (Miss. 1992).

CONCLUSION
Summary judgment in favor of Mississippi Farm Bureau Insurance Company dismissing the claims of Anthony Greg Meadows and Jeffrey Jetton is affirmed.
AFFIRMED.
HAWKINS, C.J., and DAN M. LEE and PRATHER, P.JJ., and PITTMAN, BANKS and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion, joined by SULLIVAN, J.
McRAE, Justice, dissenting:
By distinguishing between Class I and Class II insureds in an uninsured motorist policy, the majority ignores the plain language of the statute as well as a vast body of our case law. Misquoting the statute, it erroneously concludes that Anthony Greg Meadows and Jeffrey Jetton were not "insureds" within the terms of the Blackwell's uninsured motorist policy and thus, not entitled to aggregate the coverage available thereunder. Since the correct language of the statute must prevail over any contrary language contained within the policy, I respectfully dissent.
Contrary to the position taken by the majority and Mississippi Farm Bureau, Miss. Code Ann. § 83-11-103(b) did not make a distinction between Class I and Class II insureds in 1989 or at any other time. For purposes of uninsured motorist coverage only, the statute defines "insured" as follows:
The term "insured" shall mean the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses, with the consent, express or implied, of the named insured, the motor vehicle to which the policy applies, and a guest in such motor vehicle to which the policy applies, or the personal representative of any of the above.
Notably, the statute uses the conjunctive "and" when speaking of guest passengers. This language has remained virtually unchanged since the enactment of the uninsured motorist law by the legislature in 1966. 1966 Miss. Laws 524, § 2.
In Wickline v. U.S. Fidelity & Guaranty Co., 530 So.2d 708 (Miss. 1988), we put to rest any lingering notions that Class I and II insureds might be treated differently for purposes of the aggregation or stacking of uninsured motorist coverage. See also, Brown v. Maryland Casualty Co., 521 So.2d 854 (Miss. 1987) (permissive user was "an insured" by statute and thus a "covered person" under policy definition and entitled to aggregate benefits); Pearthree v. Hartford Accident & Indemnity Co., 373 So.2d 267 (Miss. 1979) (passenger killed in accident was "insured" and her legal representative was entitled to collect aggregated UM benefits). Because of their reliance upon the decisions of other jurisdictions rather than the language of our own statute, we criticized Aetna Casualty & Surety Co. v. Barker, 451 So.2d 731 (Miss. 1984) and Lowery v. State Farm Automobile Insurance Co., 285 So.2d 767 (Miss. 1974), upon which both the majority and the insurer rely to recreate different rights for different classes of insureds. Wickline, 530 So.2d at 714. Finding that the named insured, Mills Carter, Jr., "paid premiums for the benefit of all insureds, including the statutory UM third party beneficiary Stacy Wickline," we held:
the operative provisions of the Mississippi Uninsured Motorists Act have been declared as a matter of positive law to provide that all classes [of] statutory insureds may recover of the UM insurer all amounts he or she may be entitled to recover as damages from the uninsured motorist, limited only by the limits of UM *112 coverage multiplied by the number of vehicles insured in the policy.
Id. at 714-715. Moreover, even in those instances where a distinction between Class I and Class II insureds has been acknowledged, we have held that Class II insureds are entitled to aggregate or stack uninsured motorist coverage. Harris v. Magee, 573 So.2d 646 (Miss. 1990) (widow of deceased employee, a permissive user, entitled to stack benefits under his employer's business UM policy); Cossitt v. Nationwide Mutual Insurance Co., 551 So.2d 879 (Miss. 1989) (injured passenger/employee entitled to recover aggregated benefits of UM policies covering church's three buses). Thus, to suggest that any distinction exists between Class I and Class II insureds is contrary to our directive that "[t]he statute is to be liberally construed so as to achieve compensation." Harris, 573 So.2d at 654.
Relying solely on State Farm Mutual Automobile Insurance Co. v. Davis, 613 So.2d 1179 (Miss. 1992), the majority perfunctorily concludes that as Class II insureds, Meadows and Jetton, were entitled only to the benefits stemming from the uninsured motorist coverage on the vehicle in which they were riding, not the other five vehicles covered by the Blackwell's policy with Mississippi Farm Bureau. This is contrary to our decisions in Harris, Cossitt and Wickline, none of which have been overruled. In Wickline, we found that the wrongful death beneficiaries of Stacy Wickline, a passenger in an automobile driven by Mills Carter, III, were entitled to aggregate uninsured motorist benefits on four vehicles owned by Mills Carter, Jr. and insured under a policy with U.S.F. & G. 530 So.2d at 713-714. As we explained:
No one would question stacking were Mills Carter, Jr. the named insured, the plaintiff. A combined reading of Brown, Pearthree, and [Hartford Accident & Indemnity Co. v.] Bridges [350 So.2d 1379 (Miss. 1977)] establishes as much. Are Stacy Wickline's personal representatives insureds of any less status than Carter? No, not if the statutory definition be respected. But it may be argued that stacking is only just in Carter's case because he paid the multiple premiums and this entitles him to the multiple coverages. Stacy Wickline paid no premiums. The point loses force when it is remembered that no third party beneficiaries give the consideration that yields an obligation he may of right enforce. Here, Mills Carter, Jr. paid the premiums for the benefit of all insureds, including the statutory third party beneficiary Stacy Wickline. The advantage to U.S.F. & G. from denying stacking here would be economically identical to that condemned in so many other contexts.
Wickline, 530 So.2d at 714-715. In contrast, the majority in Davis distinguished Wickline solely because the host's vehicles were insured under separate policies instead of one. Davis, 613 So.2d at 1179. As was pointed out in the dissent to Davis, to make such a distinction "opens the door for insurance companies to circumvent the intents and purposes of the UM statute by encouraging them to write only single vehicle policies." 613 So.2d at 1184 (McRae, J., dissenting). Likewise, in the case sub judice, it should make no difference that the Blackwell's vehicles were listed on separate polices rather than on one policy. The policies were attached to a single standard contract and bore the identical membership number, 509473. Each was signed and dated on November 2, 1989. The same premiums provided the same coverage as if the policies had been listed on a single form. In fact, it is a distinction of form, not one of substance.
We have recognized that uninsured motorist coverage is personal to insureds, providing coverage for people and not vehicles. State Farm Mutual Automobile Insurance Co. v. Nester, 459 So.2d 787, 793 (Miss. 1984), quoting Appleman, Insurance Law and Practice § 5080. Accordingly, for the reasons stated herein as well as those articulated in my dissent to Davis, I believe that the majority erred in finding that the circuit court correctly granted Mississippi Farm Bureau's motion for summary judgment.
SULLIVAN, J., joins this opinion.