# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-01669-SCT

*DANIEL MEYERS*

**v.**

*AMERICAN STATES INSURANCE COMPANY,*
*AMERICAN ECONOMY INSURANCE COMPANY*
*AND SAFECO INSURANCE*
*COMPANY OF AMERICA*


| | |
|---|---|
| DATE OF JUDGMENT: | 7/15/2003 |
| TRIAL JUDGE: | HON. DALE HARKEY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ADRIENNE P. PARKER |
| | WAYNE E. FERRELL, JR. |
| ATTORNEYS FOR APPELLEES: | JAN F. GADOW |
| | W. WRIGHT HILL, JR. |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 06/09/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Daniel Meyers sued his employer's insurer, Safeco Insurance Company of America, claiming he was entitled to stack underinsured motorist insurance benefits on his employer's fleet of vehicles to compensate him for damages resulting from an auto accident while in the course of his employment. Safeco moved for summary judgment which the trial court granted, and we affirm.

**FACTS**

¶2.     Alvin Clifton, an employee of B&S Trucking, Inc. and Odyssey Services, Inc., made a left turn across a Lucedale, Mississippi highway, failing to give the right of way to Daniel Meyers, an employee of May and Co., Inc.  The two vehicles slammed into one another, rendering Meyers a quadriplegic.  Both men were working in the course and scope of their employment at the time of the accident and were driving company owned and/or insured vehicles.

¶3.     Meyers originally sued Clifton, B&S, and Odyssey for $20,000,000.00 in damages. Both B&S and Odyssey insured Clifton under their policies.  Meyers settled with Odyssey, receiving the $500,000.00 limit of its business automobile liability policy.  The trial court incorporated the settlement in a final judgment against Odyssey, awarding judgment against the company for $20,500,000.00 pursuant to Meyers' covenant not to execute.  Meyers also settled with B&S, receiving $990,000.00 of its $1,000,000.00 business automobile liability policy.  Like the settlement with Odyssey, the trial court incorporated B&S's settlement in a final judgment against B&S for $20,500,000.00 pursuant to a covenant not to execute. Meyers dismissed all claims against Clifton after he sought bankruptcy protection.

¶4.     Meyers amended his complaint, naming as defendant American States Insurance Co., the issuer of two different policies to his employer, May and Co.  Meyers then amended his complaint again, naming American Economy Insurance Company and Safeco Insurance

2

Company of America.  However, because Safeco eventually purchased both American States and American Economy, we collectively refer to the defendants as Safeco.

¶5.    Safeco issued to May and Co. a business automobile liability policy with a $1,000,000.00 limit and a commercial umbrella policy with a $5,000,000.00 limit.  Meyers claimed he was an insured under May and Co.'s policies and therefore entitled to any underinsured motorist coverage available under the two policies.

¶6.    On the designations page of May and Co.'s business automobile policy, under "Item Two – Schedule of Coverages and Covered Autos," the "Covered Auto Symbol" section indicates that autos represented by the symbols, "8" and "9" are covered under the policy. On the "Business Auto Coverage Form," under "Covered Autos" the agreement states,

> ITEM TWO of the Declarations shows the 'autos' that are covered 'autos' for each of your coverages.[1]  The following numerical symbols describe the 'autos' that may be covered 'autos.'  The symbols entered next to a coverage on the Declarations designate the only 'autos' that are covered 'autos.'
>
> A.    DESCRIPTION OF COVERED AUTO DESIGNATION SYMBOLS
>
> * * *
>
> 8 = HIRED AUTOS ONLY.  Only those 'autos' you lease, hire, rent or borrow.  This does not include any 'auto' you lease, hire, rent, or borrow from any of your employees[.]
>
> 9 = NONOWNED 'AUTOS' ONLY.  Only those 'autos' you do not own, lease, hire, rent or borrow that are used in

[1]"You" and "yours," as used in the "Schedule of Coverages and Covered Autos" and the "Liability Coverage" section (see infra), refer to May & Co.

> connection with your business. *This includes 'autos' owned by your employees . . . but only while used in your business or your personal affairs.*

(emphasis added).[2]

¶7.    The business automobile policy's "Commercial Auto Worksheet" provides non-owned liability coverage for May and Co.'s employees' fifty-seven vehicles and hired auto liability coverage for twenty-three of May and Co.'s hired vehicles. Additionally, in the "Liability Coverage" section, the contract contradictorily states,

> The following are 'insureds':
>
> a.    You for any covered 'auto.'
>
> b.    Anyone else while using with your permission a covered 'auto' you own, hire or borrow except: . . .
>
>> (2)    Your employee if the covered 'auto' is owned by that employee[.]

¶8.    Under the heading "Exclusions," the policy further states,

> This insurance does not apply to any of the following: . . .
>
> 4.    'Bodily injury' to:
>
>> a.    An employee of the 'insured' arising out of and in the course of employment by the 'insured' . . .

¶9.    The commercial umbrella liability policy states,

---

[2]As noted above, Meyers was working in the scope of his employment at the time of the accident.

Each of the following is an insured under this policy to the extent set forth below . . .

> F. Any employee of an insured who is included as an insured under the provisions of any 'scheduled underlying insurance' or 'unscheduled underlying insurance,' but only to the extent that coverage is provided by your scheduled or unscheduled policy.[3]

¶10. Though Meyers makes references in his briefs to his personal uninsured motorist coverage, there is no evidence of such coverage in the record.

¶11. Safeco filed a Motion for Summary Judgment which the Jackson County Circuit Court granted. Although the trial court held underinsured motorists coverage was written into both policies by operation of law, citing *Mascarella v. United States Fidelity & Guaranty Co.*, 833 So. 2d 575 (Miss. 2003), the trial court held Meyers could only stack the $10,000.00 of underinsured motorist coverage available under the two May and Co. policies. Finding the total of $20,000.00 was not sufficient to render the tortfeasor underinsured, the trial court granted Safeco's motion, and Meyers perfected this appeal.

## ANALYSIS

¶12. In his appeal, Meyers raises the following issues in his argument that the trial court inappropriately granted Safeco's Motion for Summary Judgment: (1) whether our holding in *Mascarella* is inconsistent with legislative intent, our precedent, and public policy; (2)

---

[3]The umbrella liability policy explicitly excludes coverage stemming from uninsured motorist policies.

whether Meyers was entitled to receive additional proceeds under Safeco's commercial umbrella liability insurance policy; and (3) whether he is a Class I insured. Because the analysis of the first issue he has raised overlaps with an analysis of the two other issues, we will address all three issues collectively.

¶13. In determining whether the trial court properly granted or denied a motion for summary judgment, we conduct a de novo review of the record. *Simpson v. Boyd*, 880 So. 2d 1047, 1050 (Miss. 2004). A trial court may grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* On a motion for summary judgment, the trial court is forbidden to try the issues; "it may only determine whether there are issues to be tried." *Id.* The evidence must be viewed in the light most favorable to the non-moving party, in this case, Meyers. *Id.*

### A. *Mississippi Motor Vehicle Safety Responsibility Law*

¶14. The Mississippi Motor Vehicle Safety Responsibility Law requires every auto liability insurance policy to provide to "the insured all sums which he shall be entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle." Miss. Code Ann. § 83-11-101(1). This coverage is mandatory, unless expressly declined in writing. *Id.* The Act also affords protection against underinsured motorists, defining an underinsured vehicle as one in which "the liability insurer of such

6

vehicle has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorists coverage." Miss. Code Ann. § 83-11-103(c)(iii). Therefore,

> [d]etermining that a tortfeasor is underinsured within the meaning of the statute is more complicated than determining that a tortfeasor is uninsured because she has no insurance at all. A determination that an insured is underinsured requires a limits-to-limits comparison. The amount of the tortfeasor's liability insurance is compared to the amount of uninsured motorist coverage available to the injured insured. In order to compare a tortfeasor's liability coverage limits to the [uninsured motorist] limits applicable to an insured, it is necessary in Mississippi to aggregate or stack all [uninsured motorist] coverage limits applicable to the [injured] insured.

Jeffrey Jackson, Mississippi Insurance Law & Practice 17-33 to 34 (2001). In other words, if the injured insured's uninsured motorist policies stack (that is, add up) to an aggregate dollar amount which exceeds the amount of automobile liability coverage available to the tortfeasor, underinsured motorist coverage is available to the injured insured.

¶15.    The right to stack is subject to the injured party's classification as a Class I or Class II insured. *Glennon v. State Farm Mut. Auto. Ins. Co.*, 812 So. 2d 927, 929-33 (Miss. 2002) (citing a litany of Mississippi precedent and stating "these classifications are firmly embedded in our law and are the basis for determining the rights/remedies of injured parties and the liabilities of insurance companies"); *but see id.* at 933-34 (Diaz, J., dissenting) (stating class status is irrelevant when determining uninsured motorist coverage); *Meadows v. Miss. Farm Bureau Ins. Co.*, 634 So. 2d 108, 111-12 (Miss. 1994) (McRae,

J., dissenting) (contending that the Court should abandon class distinctions). Persons included in Class I consist of the "named insured, and residents of the same household, his spouse and relatives of either, while in a motor vehicle or otherwise." *Glennon*, 812 So. 2d at 931 (quoting Miss. Code Ann. § 83-11-103(b) (1999)) (emphasis omitted). Persons included in Class II consist of "any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies." *Glennon*, 812 So. 2d at 931 (quoting Miss. Code Ann. § 83-11-103(b) (1999)) (emphasis omitted).

¶16. The coverage afforded Class I insureds extends "to all circumstances when a member of the first class is injured by an uninsured motorist. This broad protection to members of the first class arises by virtue of the phrase 'while in a motor vehicle or otherwise.'" *Glennon*, 812 So. 2d at 931 (quoting *Stevens v. United States Fid. & Guar. Co.*, 345 So. 2d 1041, 1043 (Miss. 1977)). *Accord Gov't Employees Ins. Co. v. Brown*, 446 So. 2d 1002 (Miss. 1984).[4] In the case of a Class II injured insured, the individual "is only covered because he or she is in the covered automobile." *Glennon*, 812 So. 2d at 931. We recently

---

[4]We noted the broad coverage explicitly afforded by the statute when we stated, "[A] Class I insured is covered whether in an automobile or not. The Class I insured is covered in any automobile, as a pedestrian, or even in the bathtub - if an uninsured motorist came flying through the window and caused an injury." *Glennon*, 812 So. 2d at 931. Consequently, were a Class I pedestrian hit by a motorist, the individual would be allowed to stack the uninsured motorists policy amounts applicable to the vehicle or vehicles he [the Class I pedestrian] owned. Of course, this would not necessarily result in underinsured coverage. As we stated above, the aggregate dollar amount of his uninsured motorist policy or policies would first have to eclipse the liability coverage of the motorist who hit him [the Class I pedestrian].

addressed the degree to which a Class II is covered in ***Mascarella v. United States Fidelity & Guaranty Co.***, 833 So. 2d 575 (Miss. 2003). Though we have always recognized the inherent entitlement of Class I insureds to stack coverage for which they contracted, in *Mascarella* we adopted a much more restrictive stance regarding uninsured motorist coverage of Class II insureds than we had approved of in times past.

### B. *Holding and Effect of Mascarella*

¶17. Throughout much of the jurisprudential history of the Mississippi Motor Vehicle Safety Responsibility Law, we have allowed Class II insureds to stack the following uninsured motorist policies: (1) policies which Class II insureds purchased for their own vehicles, and (2) the policy covering the accident vehicle and any other vehicles covered under the same policy. *See Glennon*, 812 So. 2d at 930-31. That is, along with stacking of the Class II insured's own policies, we have allowed intrapolicy stacking of the host vehicle's uninsured motorist benefits. *Id.* at 932-33 (noting that in all of our previous cases in which we allowed Class II insureds to stack, the uninsured coverages "being stacked were all contained in one policy.").[5] In addressing the right of a Class II insured to recover uninsured motorist benefits for which his employer (the named insured) contracted, *Mascarella* dramatically departed from our previous decisions.

---

[5]We also noted that we had "never permitted a Class II insured, employee or otherwise, to [interpolicy] stack the UM coverage of separate policies covering vehicles they were not occupying at the time of the accident." *Glennon*, 812 So. 2d at 932-33.

¶18.    In *Mascarella*, a driver injured a man, Mascarella, who was in the course of his employment with a company, Development Concepts, and driving one of their eight vehicles. *Mascarella*, 833 So. 2d at 576.  The negligent tortfeasor, Sutherland, had liability limits of $100,000.00 on his auto insurance policy.  *Id.*  Mascarella had no uninsured motorist coverage.  *Id.*  The company vehicle which Mascarella drove had uninsured motorists policy limits of $25,000.00 and was covered under the same insurance policy as the company's seven other vehicles.  *Id.*  Therefore, as a Class II insured and in accord with our precedent up to that point, Mascarella argued he was entitled to stack the $25,000.00 of uninsured motorist coverage on each of his company's eight vehicles for a total of $200,000.00 uninsured motorist coverage.  *Id.*  This coverage, "when compared to the $100,000.00 underlying liability coverage on the Sutherland automobile, [would have] result[ed] in the Sutherland vehicle being underinsured to the extent of $100,000.00."  *Id.*

¶19.    We stated it was "clear from our case law that we do indeed allow a [Class II] insured to stack his own [uninsured motorist] coverage with that of the vehicle in which he was riding."  *Id.* at 579.  However, in a departure from our previous cases, we went on to hold that Mascarella only had the right to stack the uninsured motorist coverage of the accident vehicle with his own vehicle(s)' coverage (i.e. we held Mascarella could not, as a Class II insured, engage in intrapolicy stacking).  *Id.* at 580.  Therefore, because Mascarella had no

uninsured motorist coverage on his own vehicle, he was left with the accident vehicle's $25,000.00 of coverage, an insufficient amount to deem Sutherland underinsured. ***Id.***

¶20.  ***Mascarella*** did not definitively overrule the cases contrary to its holding.[6] We therefore explicitly state what we implied with our holding in ***Mascarella***.  To the extent our previous decisions held Class II insureds were entitled to uninsured motorist benefits beyond those for which a named insured contracted, they are overruled.  *See, e.g.*, ***Glennon***, 812 So. 2d at 931-33; ***McDaniel v. Shacklee United States, Inc.***, 807 So. 2d 393, 395-99 (Miss. 2001); ***State Farm Mut. Auto. Ins. Co. v. Davis***, 613 So. 2d 1179, 1182 (Miss. 1992); ***Thiac v. State Farm Mut. Auto. Ins. Co.***, 569 So. 2d 1217, 1220-21 (Miss. 1990); ***Harris v. Magee***, 573 So. 2d 646, 654-55 (Miss. 1990); ***Cossitt v. Nationwide Mut. Ins. Co.***, 551 So. 2d 879, 883-84 (Miss. 1989); ***Wickline v. United States Fid. & Guar. Co.***, 530 So. 2d 708, 714-15 (Miss. 1988); ***Brown v. Md. Cas. Co.***, 521 So. 2d 854, 855-56 (Miss. 1987); *see also* ***Box v. State Farm Mut. Auto. Ins. Co.***, 692 So. 2d 54, 58 (Miss. 1997) (declining to overrule ***Davis***);  ***Miss. Farm Bureau Cas. Ins. Co. v. Curtis***, 678 So. 2d 983, 988-89 (Miss. 1996) (citing ***Davis*** with approval); ***Meadows v. Miss. Farm Bureau Ins. Co.***, 634 So. 2d 108, 110-11 (Miss. 1994) (citing ***Davis*** with approval); *but see* ***McDaniel***, 807 So.

---

[6]Consequently, the decision created uncertainty as to the state of our jurisprudence in this area.  *See* Jeremy Vanderloo, Note, *Insurance without Assurance: Stacking Uninsured/Underinsured Motorist Coverage under Commercial Fleet Policies after* Mascarella v. United States Fidelity and Guaranty Company, 23 Miss. C.L. Rev. 157, 177-78 (2004) (stating the phrase "[u]nder these facts" at the end of ***Mascarella***, combined with the failure to overrule our previous decisions, may have suggested a willingness to find a fact pattern under which our previous decisions were still valid law).

2d at 399-401 (Smith, J., dissenting) (noting the absurd result of affording $17,580,000.00-worth of uninsured motorist coverage for a Class II employee when the employer only paid a $78.50 premium for the coverage).[7]

### C.    *Whether Meyers Is Covered Under the Policies and Can Stack Coverage*

¶21.    Before determining the amount of uninsured motorist coverage to which Meyers is entitled, we must first examine: (1) whether he is covered under the policy in question; and (2) whether he is entitled to coverage under the uninsured motorist statute. ***Davis***, 613 So. 2d at 1180 (citing ***Gillespie v. S. Farm Bureau Cas. Ins. Co.***, 343 So. 2d 467, 471 (Miss. 1977)).

#### 1.    *Meyers' Policy & May & Co.'s Automobile Insurance Policy*

##### a.    *Whether Meyers is Covered Under the Policies*

¶22.    First, Meyers is clearly covered by any personal automobile policies under which he is a Class I insured.  Second, May and Co.'s automobile insurance policy explicitly provides coverage for Meyers' vehicle on its designation page and also makes clear that coverage of Meyers' vehicle is part of the consideration for which May and Co. paid its insurance premium.  Accordingly, we hold the policy does cover Meyers' vehicle.

##### b.    *Whether Meyers Can Stack Under the Policies*

---

[7]We note that the Mississippi Legislature recently enacted Miss. Code Ann. § 83-11-102 (Rev. 1999).  The statute addresses the fleet/non-fleet distinction for which Justice (now Chief Justice) Smith argued in his ***McDaniel*** dissent.  ***McDaniel***, 807 So. 2d at 399-401 (Smith, J., dissenting).  The statute is inapplicable to the facts at hand since it was not effective until July 1, 2002.  The accident occurred and the suit was filed prior to July 1, 2002.

¶23. Meyers argues that as an employee driving a covered vehicle, he is a Class I insured under the two May and Co. policies in question. We resolved this issue in *Harris* when we held that an employee who was driving a vehicle covered under his employer's business automobile policy was not a Class I insured since the employee was not named on the policy. 573 So. 2d at 656 (citing Miss. Code Ann. § 83-11-103(b) (Supp. 1990)). *See also Glennon*, 812 So. 2d at 933 (holding that employees who are not named in the policy are Class II insureds under the statute).

¶24. A rejection of uninsured motorist coverage must be done expressly in writing. Miss. Code Ann. § 83-11-101 (Rev. 2002). May and Co.'s business automobile policy made no provision for or against uninsured motorist coverage. Therefore, we read into the contract the statutory minimum of $10,000.00 per person and $20,000.00 per accident. *Harris*, 573 So. 2d at 656-57. Even so, under *Mascarella*, only the uninsured motorist coverage of the accident vehicle applies to Meyers. Therefore, Meyers is only entitled to $10,000.00 of uninsured motorist coverage under the May and Co. business automobile liability policy. He is allowed to stack this coverage with any personal uninsured motorist coverage he may have; however, there is no evidence in the record of any personal coverage, leaving him with $10,000.00 of uninsured motorist coverage.

   2. *May & Co.'s Commercial Umbrella Liability Policy*

    *a.* *Whether Meyers is Covered Under the Policy*

¶25. Meyers argues he is an insured under the provisions of the commercial umbrella insurance policy. The policy does state it covers "[a]ny employee of an insured who is included as an insured under the provisions of any 'scheduled underlying insurance' . . . but only to the extent that coverage is provided by your scheduled or unscheduled policy." As we noted above, Meyers' vehicle is listed on the business automobile policy "Schedule of Coverages and Covered Autos;" therefore, the policy makes clear Meyers is covered by the commercial umbrella policy.

b.      *Whether Meyers Can Stack Under the Policy*

¶26. Under Miss. Code Ann. § 83-11-111 (Rev. 2002), excess liability policies are exempt from the provisions of the uninsured motorist act; furthermore, May and Co.'s commercial umbrella liability policy explicitly excludes coverage stemming from uninsured motorist policies. Therefore, pursuant to Miss. Code Ann. § 83-11-111, the umbrella policy which provides excess liability coverage beyond that of the business automobile policy is exempt from the provisions of the uninsured motorist act, and Meyers is not entitled to any uninsured motorist coverage under that policy.

## CONCLUSION

¶27. The circuit court did not err in granting Safeco's Motion for Summary Judgment. Pursuant to Miss. Code Ann. §§ 83-11-101 and 103, Meyers is entitled to stack his personal uninsured motorist coverage with the $10,000.00 of uninsured motorist benefits applicable to the accident vehicle. However, because there is no evidence of personal uninsured

14

motorist coverage and the commercial umbrella policy is not subject to the uninsured motorist act, there is no coverage left on which to stack the $10,000.00 of uninsured coverage available. The tortfeasors in this case carried $1.5 million of liability coverage. Therefore, as a matter of law, Meyers' uninsured motorist coverage consequently falls $1,490,001.00 short of the amount required to entitle him to uninsured motorist benefits. We therefore affirm the circuit court's summary judgment for Safeco.

¶28.   **AFFIRMED.**

**SMITH, C.J., COBB, P.J., CARLSON AND DICKINSON, JJ., CONCUR. RANDOLPH, J., CONCURS IN RESULT ONLY. EASLEY AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**

15