833 So.2d 575 (2002)
Kade MASCARELLA,
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY.
No. 2000-FC-01838-SCT.
Supreme Court of Mississippi.
August 22, 2002.
Rehearing Denied January 2, 2003.
Ray T. Price, Hattiesburg, Attorney for Appellant.
Michael Wayne Baxter, Charles G. Copeland, Stephen K. Thomas, Attorneys for Appellee.
EN BANC.
PITTMAN, C.J., for the Court.
¶ 1. Kade Mascarella filed suit against United States Fidelity and Guaranty Company ("USF & G") in the United States District Court for the Southern District of Mississippi alleging wrongful denial of insurance benefits due under a policy of uninsured motorist insurance, as well as bad faith denial of such benefits. Both parties subsequently filed motions for summary judgment. The district court granted USF & G's motion for summary judgment and denied Mascarella's motion. Mascarella v. United States Fid. & Guar. Co., 71 F.Supp.2d 598 (S.D.Miss.1999). Mascarella thereafter perfected an appeal to the United States Court of Appeals for the Fifth Circuit. The Fifth Circuit, pursuant to Rule 20 of the Mississippi Rules of Appellate Procedure, issued a Certificate to this Court certifying the following question:

*576 Whether an injured insured is entitled to stack the underinsured motorist coverage of other vehicles covered under his fleet policy thereby making the third-party tortfeasor's vehicle an underinsured motor vehicle.

FACTS
¶ 2. Kade Mascarella was injured when the car he was driving was struck by a car driven by Alexander Sutherland. Mascarella was employed by Development Concepts, Inc., and was on the job, driving a car owned by Development Concepts, at the time of the collision. The parties agree the collision occurred as the result of Sutherland's negligence. Mascarella incurred medical expenses in excess of $65,000.00 and claims that he will incur substantial future medical expenses to adjust hardware in his back and ankle. He has a permanent limp and walks with the assistance of a cane.[1]
¶ 3. Sutherland was insured by Progressive Insurance Company with liability coverage limits of $100,000 per person. The automobile which Mascarella was driving was covered under a fleet insurance policy issued by USF & G to Development Concepts, Inc. Eight vehicles are covered by that policy with uninsured motorist coverage of $25,000 per accident per vehicle. Separate uninsured motorist premiums were charged for the eight vehicles.
¶ 4. Mascarella, with the approval of USF & G, settled with Sutherland by accepting his $100,000 policy limits. Subsequently, USF & G paid Mascarella $25,000 constituting the limits of the UM coverage of the car Mascarella was driving. Thereafter USF & G took the position that it wrongfully paid the $25,000, as the Sutherland vehicle met neither the statutory definition nor the policy definition of an uninsured/underinsured vehicle. Mascarella contends that the Sutherland vehicle was underinsured and therefore he is entitled to seek additional coverage from USF & G. Mascarella claims that he should be entitled to "stack" the UM coverage limits from all eight vehicles insured under the USF & G policy in order to have Sutherland's vehicle qualify as underinsured. This coverage, when compared to the $100,000 underlying liability coverage on the Sutherland automobile, results in the Sutherland vehicle being underinsured to the extent of $100,000. It is this additional coverage, less the $25,000 already paid by USF & G, that Mascarella is seeking.

DISCUSSION
I. WHETHER AN INJURED INSURED IS ENTITLED TO STACK THE UNDERINSURED MOTORIST COVERAGE OF OTHER VEHICLES COVERED UNDER HIS FLEET[2] POLICY THEREBY MAKING THE THIRD-PARTY TORTFEASOR'S VEHICLE UNDERINSURED.
¶ 5. There are two questions this Court addresses in an insurance "stacking" case and the first is a threshold question: 1) whether a tortfeasor's insured vehicle qualifies as underinsured and, if so, 2) whether the injured party is entitled to *577 "stack" the UM coverage of the vehicles listed under his own policy to fully compensate him for his damages. Wickline v. United States Fid. & Guar. Co., 530 So.2d 708, 712 (Miss.1988). The question certified to this Court concerns the threshold question: whether a particular vehicle is underinsured. At this stage, there is no need to distinguish between Class I and Class II insured parties. The only requirement is that the injured party is insured by the policy from which he seeks recovery or meets the definition of "insured" found at Miss.Code Ann. § 83-11-103(b) (1999). See generally Box v. State Farm Mut. Auto. Ins. Co., 692 So.2d 54, 58 (Miss.1997); Guardianship of Lacy v. Allstate Ins. Co., 649 So.2d 195, 198 (Miss.1995); State Farm Mut. Auto. Ins. Co. v. Davis, 613 So.2d 1179, 1180-81 (Miss. 1992). Therefore, the class distinctions of insured parties will be ignored in this analysis.
¶ 6. The certified question asks this Court to interpret a definition of an "uninsured motor vehicle" found in the Mississippi Motor Vehicle Safety Responsibility Law. According to the statute, an uninsured motor vehicle is defined as:
An insured motor vehicle, when the liability insurer of such vehicle has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist coverage...
Miss.Code Ann § 83-11-103(c)(iii). The question would have this Court define the scope of "the limits applicable to the injured person provided under his uninsured motorist coverage" and determine if the stacked limits included within the scope result in Sutherland's vehicle qualifying as uninsured.
¶ 7. This Court examined in detail this section of the statute's language in Wickline v. United States Fid. & Guar. Co., 530 So.2d 708 (Miss.1988). In that case, the heirs of a passenger killed in a collision with a parked car sought to have the moving car declared underinsured in order to recover damages from the deceased's UM coverage. Id. at 710. The moving car was insured under a policy which provided $10,000.00 in bodily injury liability coverage and $10,000.00 in UM coverage. Id. The deceased was separately insured under two different insurance policies providing UM coverage of $10,000.00 each.[3]Id. The Court held that "the limits applicable to the injured person provided under his uninsured motorist coverage" included the UM coverage provided by the two separate policies insuring the deceased. After stacking these limits with the UM coverage of the moving vehicle and comparing the sum with the vehicle's bodily injury liability limit, the moving vehicle qualified as uninsured. Id. at 712. The case's holding is instructive:
If an injured person is insured under more than one policy of uninsured motorist insurance, the limits of each such policy are "applicable" to him. Harthcock v. State Farm. Mut. Auto. Ins. Co., 248 So.2d 456 (Miss.1971). If he his injured while riding as a passenger, the uninsured motorist coverage of the vehicle in which he is riding, in addition to that of his own vehicles, is "applicable to the injured person." Southern Farm *578 Bureau Cas. Ins. Co. v. Roberts, 323 So.2d 536 (Miss.1975).
Wickline, 530 So.2d at 713. See also Washington v. Georgia Am. Ins. Co., 540 So.2d 22, 25-26 (Miss.1989). The Court next considered this question in Thiac v. State Farm Mut. Auto. Ins. Co., 569 So.2d 1217 (Miss.1990). The facts of Thiac are unique and are examined below.
¶ 8. Rachael Thiac was injured when the Porsche in which she was a passenger left the road and hit a tree. Id. at 1218. State Farm insured the Porsche in the name of its driver and the policy provided $25,000.00 of liability for bodily injury and $25,000.00 in UM coverage. Id. The driver of the car also owned and insured a Datsun through State Farm under a separate policy. That policy provided UM coverage of $10,000.00. Id. Thiac had no applicable insurance of her own. Id. at 1219. State Farm paid Thiac the $25,000.00 limit in liability coverage but refused to pay the UM benefits on the Datsun when Thiac made a demand for them. Id. at 1218. State Farm filed a complaint for declaratory judgment, and Thiac countered with a motion for summary judgment. The trial court entered an order denying further relief to Thiac and denied her motion for summary judgment. Id. This Court affirmed the trial court's actions. Id. at 1221.
¶ 9. According to Thiac:
In determining whether an insured vehicle is underinsured, we have compared the limits of liability coverage on that vehicle to the uninsured limits provided through the injured party's own coverage.
The rule of law which this Court has established in interpreting our statutory definition of an underinsured motorist is: for the purpose of qualifying the host vehicle as underinsured, a guest passenger is permitted to stack her own UM coverage with the UM coverage on the host vehicle.

Id. at 1219-20 (emphasis in original). Thiac, relying upon the rule announced in Wickline, placed emphasis on limiting the UM coverage applicable to the insured to the UM coverage of the "host vehicle." Wickline, citing the rule from Southern Farm Bureau Cas. Ins. Co. v. Roberts, held that the coverage applicable to the injured insured is limited to "the uninsured motorist coverage of the vehicle in which he is riding." Wickline, 530 So.2d at 713 (emphasis added). Even a broad reading of the rule in each of these cases reaches the same result: only the UM coverage of the vehicle in the accident which injures the insured can be included when stacking all the UM coverages applicable to an injured insured. See also Fidelity & Guar. Underwriters, Inc. v. Earnest, 699 So.2d 585, 590 (Miss.1997); Dixie Ins. Co. v. State Farm Mut. Auto. Ins. Co., 614 So.2d 918, 920-21 (Miss.1992); State Farm Mut. Auto. Ins. Co. v. Davis, 613 So.2d 1179, 1182 (Miss.1992).
¶ 10. The policy behind such a ruling was elaborated upon in Thiac:
In the current case, Thiac had no insurance of her own. To allow her to stack Ellzey's Datsun for the purposes of determining whether the Porsche was underinsured would be contrary to the legislative purpose in adopting the underinsured motor vehicle concept as a part of our statutory scheme. As pointed out in Cossitt v. Federated Guar. Mut. Ins. Co., 541 So.2d 436, 442 (Miss. 1989), Thiac had the means to protect herself against tortfeasors who carry insurance which is legally sufficient but inadequate to compensate the damages sustained. This is the policy behind our legislature's incorporation of the "underinsured" *579 concept into our legislative scheme. Thiac, "like all other similarly situated motorists, could have contracted with her carrier for excess coverage beyond the statutory minimum, thereby rendering the tortfeasor", Ellzey, underinsured per § 83-11-103(c)(iii).
Thiac, 569 So.2d at 1221. In a telling parallel, Mascarella, like Thiac, is not separately insured. It is clear from our case law that we do indeed allow an injured insured to stack his own UM coverage with that of the vehicle in which he was riding. However, our analysis cannot end here.
¶ 11. Mascarella contends that the insurance policy is ambiguous. We disagree, as the two clauses cited by Mascarella comport to the law in this state. Under the heading "ADDITIONAL DEFINITIONS," an underinsured motor vehicle is defined as follows:
[A]n underinsured motor vehicle is a motor vehicle or trailer for which the sum of all liability policies at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged but their limits are less than the sum of:
(1) The limit of liability for uninsured motorists coverage applicable to the vehicle the "insured" was "occupying" at the time of the "accident"; and
(2) Any other limit of liability for uninsured motorists coverage applicable to the "insured" as a named insured or "family member"
Mascarella offers the following language from the "LIMIT OF INSURANCE" section of the policy to demonstrate ambiguity:
Regardless of the number of "autos", "insured's", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of UNINSURED MOTORIST COVERAGE shown in the declarations or schedules. If there is more than one covered "auto", our limit of insurance for any one "accident" is the sum of the limits for those "autos" you own which are covered "autos".
From its context, this second passage clearly answers the second question: yes, an insured who was injured by an underinsured vehicle can stack the UM coverage limits of all the vehicles covered by the policy to allow for full recovery of damages. Since the question before us involves only the threshold question, this second passage sheds no light on the matter.
¶ 12. Having examined the law, we now note the facts of this case are different from the question certified to us. The question asks whether an injured insured can stack the UM coverages from his fleet to have the tortfeasor's vehicle declared underinsured. The fleet in the facts presented to us does not belong to Mascarella. It belongs to and is insured by Development Concepts. Our case law, as analyzed above, restricts the stacking of UM coverages to the accident vehicle and an injured insured's fleet. Mascarella has no fleet, and he is not otherwise insured. These facts preclude Mascarella from stacking the UM coverage of the other seven vehicles in Development Concepts's fleet of vehicles to have Sutherland's vehicle qualify as uninsured. This is true, regardless of whether the insurance policy covering the fleet of vehicles owned by Development Concepts is ambiguous since the above analysis involves an interpretation of what the statute will allow and not what the policy will allow. Even so, the language of the policy is in accord with the *580 opinions examined above and therefore the statute. Therefore, Mascarella's attempt to stack the UM coverages of cars in a fleet which is not his must fail.

CONCLUSION
¶ 13. The wording of the certified question therefore warrants two answers. Based on the text of the statute, this Court's prior decisions in Wickline, Thiac, Davis, Dixie Ins. Co., and Earnest, and the policy's own language, one answer to the question now before the Court is that an injured insured may stack the UM coverage of vehicles covered under his own fleet policy with the UM coverage of the vehicle in which he is a passenger in order to have the third party tortfeasor's vehicle declared underinsured. However, Mascarella did not insure the vehicle in which he was traveling at the time of the collision nor the "fleet" of vehicles listed on the policy. The "fleet" in these circumstances is actually insured by Development Concepts. Therefore, Mascarella can only stack the UM coverage of the vehicle in which he was traveling with his own UM coverage, as examined above. Mascarella, having no UM coverage of his own, has nothing to stack with the UM coverage of the car he was driving in order to compare that sum with Sutherland's bodily injury liability limits. Sutherland's vehicle is therefore not underinsured.
¶ 14. Under these facts, an injured insured may not stack the UM coverage of the other "fleet" vehicles not involved in the accident to have a third-party tortfeasor's vehicle declared underinsured where the injured party did not insure the fleet in question.
¶ 15.CERTIFIED QUESTION ANSWERED.
SMITH, P.J., WALLER, EASLEY AND CARLSON, JJ., CONCUR. COBB, J., CONCURS IN PART. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, J. COBB, J., JOINS IN PART. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J.
McRAE, P.J., Dissenting.
¶ 16. I agree with Justice Diaz that Mascarella is an intended beneficiary of his employer's uninsured motorist policies covering the fleet of vehicles. Further, I agree that the policy language clearly includes the sum of the uninsured motorist coverage for all automobiles in the fleet for any one vehicle, and as such, Mascarella should be allowed to stack uninsured motorist coverage in this case.
¶ 17. I write further to note that the majority rules only on the contract and overlooks that the statute is part of the contract. Insurance companies cannot write around the statute. Such action is legislative in nature and should be addressed to that body, not by writing contracts in such a way as to circumvent applicable statutes. The uninsured motorist coverage statutes do not preclude stacking and in effect allow it. See Miss. Code Ann. §§ 83-11-101 to -111 (1999). We have held that the statute by its own terms sets the parameters for insureds. See McDaniel v. Shaklee U.S., Inc., 807 So.2d 393, 398-99 (Miss.2001).
¶ 18. Miss.Code Ann. § 83-11-103(b) defines the term "insured" for the purposes of any policy's uninsured motorist provisions as follows. "The term `insured' shall mean the named insured ... and any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies, and a guest in such motor vehicle to *581 which the policy applies, or the personal representative of any of the above...." When the policy does not state the terms, we fill in the blanks in accordance with the statute. Hence, not only does the contract in this case allow aggregation or stacking, but the statute identifies who is an insured. Mascarella clearly falls within the statutory definition of insured.
¶ 19. Therefore, in light of the policy language in this case and the applicable statutes, Mascarella should be allowed to stack the uninsured motorist coverage of his employer as an insured and intended beneficiary of the policy. Accordingly, I respectfully dissent.
DIAZ, J., JOINS THIS OPINION. COBB, J., JOINS THIS OPINION IN PART.
DIAZ, J., Dissenting.
¶ 20. I respectfully dissent to the majority's conclusion that Mascarella cannot stack the uninsured motorists policies that cover the fleet vehicles. The majority states that, under the Mississippi cases that have allowed stacking, the rule on stacking has been limited so as to only include: (1) the uninsured motorist coverage of the host vehicle in which the injured party was riding; and (2) the party's own personal uninsured motorist coverage, if the party has his own coverage for any other cars. The majority correctly states that an injured insured can stack his own UM coverage on other cars with the UM coverage of the vehicle in which he was riding. However, the majority incorrectly concludes that Mascarella has no other UM coverage under the facts of the instant case.
¶ 21. First, as an agent/employee of Development Concepts, Mascarella is the beneficiary of uninsured motorist policies that are intended to cover the employees and authorized drivers of eight automobiles owned by Development Concepts. The UM coverage in this case is in fact Mascarella's own coverage. The coverage benefits Mascarella, not Development Concepts. Whether Development Concepts provides the coverage for Mascarella as a benefit and/or whether Mascarella provides coverage for himself are not the crucial questions that determine whether the policies can be stacked. The more pertinent question is simply to ask whether Mascarella is covered as an intended insured under any applicable uninsured motorist policies. Indeed, Mascarella is an intended beneficiary of the uninsured motorist policies covering the fleet vehicles. As stated by the majority, Mascarella was on the job and driving a fleet vehicle at the time of the accident.
¶ 22. Second, the language in this particular uninsured policy clearly and unambiguously provides, "[i]f there is more than one covered `auto,' our limit of insurance for any one `accident' is the sum of the limits of those `autos' you own which are covered `autos'." According to this language, the coverage is extended to include the sum of the uninsured motorist coverage for all eight automobiles owned by Development Concepts; therefore, stacking the uninsured motorist benefits would be appropriate. Mascarella, as an authorized driver and agent/employee of Development Concepts, should be allowed to stack UM coverage for his fleet. For these reasons, I respectfully dissent.
GRAVES, J., JOINS THIS OPINION.
NOTES
[1] USF & G asserts that the nature and extent of Mascarella's injuries are disputed, but that such injuries are irrelevant and not necessary to the pending legal issue of whether the Sutherland vehicle was underinsured. The trial court did not address the issue of whether Mascarella was damaged more than $100,000.
[2] This Court does not distinguish cases dealing with "fleet" policies from any other insurance cases, but the term will be used throughout to avoid confusion. See Harris v. Magee, 573 So.2d 646, 652-53 (Miss.1990); Cossitt v. Nationwide Mut. Ins. Co., 551 So.2d 879 (Miss.1989).
[3] The moving car's owner had an insurance policy under which the accident vehicle and four other cars were covered. In Wickline this Court had an opportunity to determine if the deceased could "stack" the UM coverage from each of the other four cars to have the accident vehicle declared underinsured. The Court apparently passed on the chance to hold so as the issue went unaddressed.