# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-00917-SCT

*HAL WAYNE DEATON*

*v.*

*MISSISSIPPI FARM BUREAU CASUALTY*
*INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/03/2007 |
| TRIAL JUDGE: | HON. C. E. MORGAN, III |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DANIEL LAYNE EGGER |
| | A. LEE ABRAHAM |
| ATTORNEYS FOR APPELLEE: | DALE GIBSON RUSSELL |
| | ELLEN PATTON ROBB |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 11/06/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1. Hal Wayne Deaton, an Allstate Insurance Company insured, was injured by Caresha Nichols, an uninsured motorist. Deaton was acting in the course and scope of his employment with Gregory L. Carr when injured. Carr's vehicles were insured by Mississippi Farm Bureau Casualty Insurance Company. Deaton, a Class II insured, presented a claim to Farm Bureau seeking to stack the "Uninsured Motorist Bodily Injury" ("UMBI") benefits on each of Carr's thirty-one insured vehicles. The Circuit Court of Grenada County entered a "Declaratory and Summary Judgment" in favor of Farm Bureau, finding that Deaton was

precluded from stacking the UMBI coverage under Carr's Farm Bureau policy. From that ruling, Deaton appeals.

**FACTS**

¶2.     The facts are largely undisputed. On March 3, 2005, Farm Bureau issued a "Comprehensive Automobile Policy" to Carr, insuring a fleet of thirty-one vehicles. The policy was effective from March 1, 2005, to March 1, 2006, and provided UMBI coverage in the amount of $10,000 per person and $20,000 per accident for each vehicle. On May 25, 2005, Deaton was injured by an uninsured motorist while acting in the course and scope of his employment with Carr. Specifically, Deaton was refueling one of Carr's trucks when a vehicle driven by Nichols ran off Highway 49. Nichols's vehicle sped through the service-station parking lot and struck Carr's truck, pinning Deaton against the gas pump. Deaton suffered multiple fractures, including both of his legs, which led to the subsequent amputation of his right leg. Nichols was at fault.

¶3.     Deaton was not a named insured in the Farm Bureau policy. However, as Carr's employee using an insured vehicle with permission, he was considered a Class II insured. Deaton presented a claim to Farm Bureau, seeking to stack the UMBI benefits on all thirty-one insured vehicles.[1] Farm Bureau replied:

> [t]he UMBI limits applicable to [the insured vehicle] are $10,000 per person/$20,000 per accident. The other vehicles listed on the subject insurance policy were not being used by you at the time of the accident and were not involved in the accident. Therefore, under Mississippi law and the

---

[1]Deaton also had personal automobile insurance coverage through Allstate on four vehicles, each of which provided UMBI coverage in the amount of $10,000 per person and $20,000 per accident for each vehicle.

2

language of the insurance policy,[2] you are not entitled to stack the UMBI coverage on these non-accident vehicles. However, you are entitled to the $10,000 per person UMBI limit available on the [insured vehicle] you were using at the time of the accident.

Farm Bureau then filed a "Complaint for Declaratory Judgment," seeking a declaration:

(a) that [Deaton] is not entitled to uninsured motorist benefits beyond those for which [Carr] contracted on the [insured vehicle] which was involved in the May 25, 2005 accident.
(b) that [Deaton] is not entitled to stack the uninsured motorist coverage on vehicles listed on the schedule of owned units in the Comprehensive Automobile policy issued to [Carr] by [Farm Bureau] which were not involved in the May 25, 2005 accident.
(c) that the maximum amount of uninsured motorist benefits available to [Deaton] under the Comprehensive Automobile Policy issued to [Carr] by [Farm Bureau] is $10,000.00 which is the per person uninsured motorist bodily injury limits on the [insured vehicle] which was involved in the May 25, 2005 accident . . . .

Deaton answered and affirmatively contended that *Meyers v. American States Insurance Company*, 914 So. 2d 669 (Miss. 2005), cannot be applied retroactively, arguing that "at the time of the issuance of the policy of insurance and at the time of [Deaton's] injuries, the law was that a second class insured could stack all coverages under his employer's UM fleet policy."[3]

¶4.     On February 28, 2007, Farm Bureau filed a "Motion for Summary Judgment" seeking:

a summary judgment declaring that Deaton is not allowed to stack the UMBI coverage limits of the 30 non-involved vehicles insured under his employer's

---

[2]The "Uninsured Motorist Endorsement" portion of the policy provides, in part, that "the term 'Insured Automobile' shall not include . . . (iv) for permissive users or guests, an automobile other than the one involved in the accident, that is owned, operated, or used by the named insured."

[3]*Meyers* was handed down on June 9, 2005. *See Meyers*, 914 So. 2d at 669. This was approximately three months after the issuance of the Farm Bureau policy and fifteen days after the subject accident.

policy, consistent with the Mississippi Supreme Court's decisions in [**Meyers**] and [**Alley v. Northern Ins. Co.**, 926 So. 2d 906 (Miss. 2006)],[4] and that Deaton is only entitled to recover the $10,000 in UMBI coverage under the Farm Bureau policy.

The "Response in Opposition to Plaintiff's Motion for Summary Judgment" filed by Deaton contested retroactive application of **Meyers** and **Alley** as being unfair, given Deaton's "significant and life-changing injuries[,]" and that the "ability to stack policy limits potentially affected . . . [Deaton's] decision to use this vehicle in reliance of adequate insurance protection." Following a hearing, the circuit court entered a "Declaratory and Summary Judgment" in favor of Farm Bureau, finding "the uninsured motorist coverage in this cause cannot be stacked, that such coverage is limited to $10,000.00 and the rulings in **Meyers** and **Alley** . . . are retroactive." From that ruling, Deaton timely filed his "Notice of Appeal."

## ISSUE

¶5.     This Court will consider:

(1) Whether the circuit court erred in granting Farm Bureau's "Motion for Summary Judgment."

---

[4]Specifically, Farm Bureau averred that "[a] Class II insured does <u>not</u> have the right to stack an employer's uninsured motorist coverage. [**Alley**,] 926 So. 2d 906, 909 (Miss. 2006) (citing **Mascarella v. U.S. Fidelity and Guar. Co.**, 833 So. 2d 575, 580 (Miss. 2002))."

ANALYSIS

¶6. This Court:

> applies a de novo standard of review to the grant or denial of summary judgment by a trial court. **Leffler v. Sharp**, 891 So. 2d 152, 156 (Miss. 2004). Summary judgment is appropriate when the evidence is considered in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Miss. R. Civ. P. 56(c); **Russell v. Orr**, 700 So. 2d 619, 622 (Miss. 1997).

**Hubbard v. Wansley**, 954 So. 2d 951, 956 (Miss. 2007). Furthermore, a de novo standard of review applies to questions of law. *See* **Windham v. Latco of Miss., Inc.**, 972 So. 2d 608, 610 (Miss. 2008).

¶7. "The right to stack is subject to the injured party's classification as a Class I or Class II insured." **Meyers**, 914 So. 2d at 674 (citing **Glennon v. State Farm Mut. Auto. Ins. Co.**, 812 So. 2d 927, 929-33 (Miss. 2002)). "Persons included in Class II consist of 'any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies.'" **Meyers**, 914 So. 2d at 674 (quoting Miss. Code Ann. § 83-11-103(b) (1999)). As "[a]n employee who drives a vehicle covered under his employer's business automobile policy" who "is not a named insured[,]" Deaton was a Class II insured under the Farm Bureau policy. **Alley**, 926 So. 2d at 909. As a Class II insured, Deaton is "not entitled to uninsured motorist benefits beyond those for which the named insured contracted regarding that covered vehicle." *Id*. (citing **Meyers**, 914 So. 2d at 675). Specifically, Deaton "may stack his own uninsured motorist coverage with that of the vehicle in which he was riding, but *a Class II insured does not have the right to stack an employer's uninsured motorist coverage*." **Alley**, 926 So. 2d at 909 (citing **Mascarella**, 833 So. 2d at

580) (emphasis added). *See also* **Meyers**, 914 So. 2d at 675 ("[w]e therefore explicitly state what we implied with our holding in **Mascarella**. To the extent our previous decisions held Class II insureds were entitled to uninsured motorist benefits beyond those for which a named insured contracted, they are overruled."); **Mascarella**, 833 So. 2d at 580 ("[u]nder these facts, an injured insured may not stack the UM coverage of the other 'fleet' vehicles not involved in the accident to have a third-party tortfeasor's vehicle declared underinsured where the injured party did not insure the fleet in question.").

¶8. This Court rejects Deaton's assertion that "at the time of the issuance of the policy of insurance and at the time of [Deaton's] injuries, the law was that a second class insured could stack all coverages under his employer's UM fleet policy." Three years prior thereto, this Court declared in **Mascarella** that the plaintiff:

> was injured when the car he was driving was struck by a car driven by Alexander Sutherland. Mascarella was employed by Development Concepts, Inc., and was on the job, driving a car owned by Development Concepts, at the time of the collision. . . .
>
> Sutherland was insured by Progressive Insurance Company with liability coverage limits of $100,000 per person. The automobile which Mascarella was driving was covered under a fleet insurance policy issued by USF&G to Development Concepts, Inc. Eight vehicles are covered by that policy with uninsured motorist coverage of $25,000 per accident per vehicle. . . .
>
> Mascarella, with the approval of USF&G, settled with Sutherland by accepting his $100,000 policy limits. Subsequently, USF&G paid Mascarella $25,000 constituting the limits of the UM coverage of the car Mascarella was driving. Thereafter USF&G took the position that it wrongfully paid the $25,000, as the Sutherland vehicle met neither the statutory definition nor the policy definition of an uninsured/underinsured vehicle. Mascarella contends that the Sutherland vehicle was underinsured and therefore he is entitled to seek additional coverage from USF&G. Mascarella claims that he should be entitled to "stack" the UM coverage limits from all eight vehicles insured under the USF&G policy in order to have Sutherland's vehicle qualify as underinsured.

6

*Mascarella*, 833 So. 2d at 576. Relying in part upon prior decisions,[5] this Court found that:

> [o]ur case law . . . restricts the stacking of UM coverages to the accident vehicle and an injured insured's fleet. Mascarella has no fleet, and he is not otherwise insured. *These facts preclude Mascarella from stacking the UM coverage of the other seven vehicles in Development Concepts's fleet of vehicles* to have Sutherland's vehicle qualify as uninsured. . . .
>
> Mascarella did not insure the vehicle in which he was traveling at the time of the collision nor the "fleet" of vehicles listed on the policy. The "fleet" in these circumstances is actually insured by Development Concepts. *Therefore, Mascarella can only stack the UM coverage of the vehicle in which he was traveling with his own UM coverage . . . .*

*Id*. at 579-80 (emphasis added). The circuit court's decision in favor of Farm Bureau comports with *Mascarella* and its forebears.

¶9.     Even if the circuit court relied exclusively upon *Meyers* and *Alley*, the result is the same. As a general rule, "we have held that *all judicial decisions apply retroactively unless the Court has specifically stated the ruling is prospective*." *Cleveland v. Mann*, 942 So. 2d 108, 113 (Miss. 2006) (citations omitted) (emphasis added). *See also **Miss. Transp. Comm'n v. Ronald Adams Contractor, Inc.***, 753 So. 2d 1077, 1093 (Miss. 2000); *Morgan*, 703 So. 2d at 839; *Solem v. Stumes*, 465 U.S. 638, 642, 104 S. Ct. 1338, 1341, 79 L. Ed. 2d 579, 586 (1984) ("a legal system based on precedent has a built-in presumption of retroactivity."). Regarding the policy of retroactivity, this Court has discussed the United

---

[5]*See **Fid. & Guar. Underwriters, Inc. v. Earnest**, 699 So. 2d 585, 590 (Miss. 1997); **Dixie Ins. Co. v. State Farm Mut. Auto. Ins. Co.**, 614 So. 2d 918, 920-21 (Miss. 1992); **State Farm Mut. Auto. Ins. Co. v. Davis**, 613 So. 2d 1179, 1182 (Miss. 1992); **Thiac v. State Farm Mut. Auto. Ins. Co.**, 569 So. 2d 1217, 1219-20 (Miss. 1990); **Wickline v. United States Fid. & Guar. Co.**, 530 So. 2d 708, 713 (Miss. 1988).

States Supreme Court's decision in *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 111 S. Ct. 2439, 115 L. Ed. 2d 481 (1991), *superseded by statute on other grounds*, stating:

> because [the United States Supreme Court] had . . . applied the new rule of law to the parties before the Court, *principles of equity and stare decisis mandate that it must apply the new rule of law to all others*. [*Id*. at 540]. The Court stated that similarly situated litigants should be treated the same both in the criminal context and in the civil context, and that substantive law will not "shift and spring" on the particular equities of a particular case. [*Id*. at 540, 543]. The Court stated, "[o]nce retroactive application is chosen for any assertedly new rule, it is chosen for all others who might seek its prospective application. . . ." [*Id*. at 543].

*Ronald Adams*, 753 So. 2d at 1094 (emphasis added). Consistent with this policy, we applied *Meyers* retroactively in *Alley*. This Court notes that *Meyers* did not "specifically stat[e] the ruling is prospective." *Cleveland*, 942 So. 2d at 113.

## CONCLUSION

¶10.    The circuit court properly found that Deaton was prohibited from stacking Carr's UMBI coverage under the Farm Bureau policy. Therefore, this Court affirms the judgment of the Circuit Court of Grenada County.

¶11.    **AFFIRMED.**

**SMITH, C.J., WALLER P.J., CARLSON, DICKINSON AND LAMAR, JJ., CONCUR. DIAZ, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY EASLEY AND GRAVES, JJ.**


**DIAZ, PRESIDING JUSTICE, DISSENTING:**

¶12.    Because I disagree with this Court's holdings in *Meyers v. American States Insurance Co.*, 914 So. 2d 669 (Miss. 2005) and *Alley v. Northern Insurance Co.*, 926 So. 2d 906 (Miss. 2006), I respectfully dissent.

8

¶13. For the reasons stated in my dissenting opinion in *Glennon v. State Farm Mutual Automobile Insurance Co.*, 812 So. 2d 927, 933-934 (Miss. 2002) (Diaz, J., dissenting), I disagree with the holdings of *Meyers* and *Alley*. Class distinctions are inapplicable to uninsured motorist policies and provisions and contrary to public policy, which favors compensation for the injured. *Glennon*, 812 So. 2d at 933-34 (Diaz, J., dissenting). Because an employee is a beneficiary and an intended insured under his employer's policies, the employee should be allowed to stack the uninsured motorist coverage of his employer. *Mascarella v. U.S. Fidelity & Guar. Co.*, 833 So. 2d 575, 581 (Miss. 2002) (Diaz, J., dissenting). As class distinctions are irrelevant, Deaton should be allowed to stack the benefits of his employer's UMBI coverage. Summary judgment should be reversed and the case should be remanded for further proceedings.

**EASLEY AND GRAVES, JJ, JOIN THIS OPINION.**