# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00558-COA

**SHELBY BREWER, BY AND THROUGH HER PARENTS AND NEXT FRIENDS DORIS BREWER AND JASON BREWER; JASON BREWER, INDIVIDUALLY; AND DORIS BREWER, INDIVIDUALLY**   **APPELLANTS**

**v.**

**MISSISSIPPI FARM BUREAU CASUALTY INSURANCE COMPANY**   **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/14/2020 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANTS: | PAUL V. OTT |
| ATTORNEYS FOR APPELLEE: | JAMES R. MOORE JR. CHARLES LANDON KIDD |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | REVERSED AND REMANDED - 05/25/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WILSON, P.J., LAWRENCE AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.    This case asks whether a passenger may stack the uninsured motorist (UM) benefits of other vehicles covered under the same insurance policy as the host car. The trial court held the passenger could not stack the UM benefits. Finding that the insurance contract does not expressly prohibit stacking, we reverse the grant of summary judgment for the insurance provider.

**FACTS**

¶2.    Shelby Brewer was riding in a car driven by Allison McLain when it was struck by another car. There was no dispute that the driver of the second car was at fault. Brewer incurred over $100,000 in medical expenses and suffered numerous injuries as a result of the accident.

¶3.    The tortfeasor was insured for $25,000 in liability coverage. Brewer had personal UM coverage of $75,000 through her parents' insurance policy. Farm Bureau insured the McLain car with $25,000 in uninsured motorist benefits per vehicle, and three additional vehicles were also covered.

¶4.    Jason and Doris Brewer, individually and as Brewer's parents and next friends, filed a complaint requesting Farm Bureau aggregate, or "stack," the UM benefits of all four vehicles on the McLain policy. This "stacked" coverage would provide a sum of $100,000 in UM coverage from the vehicle owned by the McLains. Brewer argued that the limits of liability in the insurance contract did not prohibit guest passengers from stacking the UM coverage of all vehicles listed on the policy.

¶5.    Farm Bureau filed a motion for summary judgment arguing that as a passenger, Brewer was only entitled to the UM coverage for the Farm Bureau-insured car she occupied at the time of the accident. The insurance provider claimed Brewer's passenger status automatically prohibited the UM policy from stacking.

¶6.    After hearing argument, the court granted summary judgment in favor of Farm Bureau. The court agreed with Farm Bureau that Brewer "is only entitled to the uninsured motorist benefits on the McLain vehicle in which she was riding as a guest passenger and is

2

not entitled to stack the uninsured motorist coverage on the other McLain vehicles insured by the same Farm Bureau policy[.]" Brewer appealed.

## STANDARD OF REVIEW

¶7.     "In determining whether the trial court properly granted or denied a motion for summary judgment, we conduct a de novo review of the record." *Meyers v. Am. States Ins. Co.*, 914 So. 2d 669, 673 (¶13) (Miss. 2005).

## ANALYSIS

¶8.     The question at hand presents an issue of contract interpretation. It is fundamental law that contracts are to be construed heavily against the drafter. *Mut. Ben. Health & Accident Ass'n v. Blaylock*, 163 Miss. 567, 143 So. 406, 407 (1932) ("It is a familiar rule of construction of contracts, and especially insurance contracts, that they are construed most strongly against [the] party drafting [the] contract, and most favorably to the policyholder."). Insurance policies are subject to this fundamental rule. *State Farm Mut. Auto. Ins. Co. v. Scitzs*, 394 So. 2d 1371, 1372 (Miss. 1981) ("Insurance [c]ontracts are construed most strongly against [the] party drafting [the] contract, and most favorably to the policyholder."); *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (¶8) (Miss. 1998) ("Mississippi law also recognizes the general rule that provisions of an insurance contract are to be construed strongly against the drafter.").

¶9.     "Where a clause of an insurance policy subject to dispute involves exceptions or limitations on the insurer's liability under the policy, this Court construes the policy even more stringently." *J & W Foods Corp.*, 723 So. 2d at 552 (¶9). Exclusions are narrowly

3

construed in favor of coverage. *Johnson v. Preferred Risk Auto. Ins. Co.*, 659 So. 2d 866, 871-72 (Miss. 1995) (holding that "the language of the Mississippi UM Act must be construed liberally to provide coverage and strictly to avoid or preclude exceptions or exemptions from coverage"); *Scitzs*, 394 So. 2d at 1373 ("Terms of insurance policies are construed favorably to insured wherever reasonably possible, particularly exclusion clauses."). And "[a]ny language attempting to limit an insurer's liability must fail when it deprives the insured of benefits for which a premium was paid." *Gov't Emps. Ins. Co. v. Brown*, 446 So. 2d 1002, 1006 (Miss. 1984).

¶10. Turning to the precise issue, "[t]here are two questions this Court addresses in an insurance 'stacking' case and the first is a threshold question: 1) whether a tortfeasor's insured vehicle qualifies as underinsured and, if so, 2) whether the injured party is entitled to 'stack' the UM coverage of the vehicles listed . . . to fully compensate him for his damages." *Mascarella v. U.S. Fid. & Guar. Co.*, 833 So. 2d 575, 576-77 (¶5) (Miss. 2002).

¶11. An underinsured vehicle is one in which the "liability insurer of such vehicle has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist coverage[.]" Miss. Code Ann. § 83-11-103(c)(iii) (Rev. 2011). In this case it is undisputed that the tortfeasor was an underinsured motorist. Accordingly, we turn to whether Brewer is permitted to stack the policy's UM benefits.

*A.      Uninsured Motorist Stacking Law in Mississippi*

¶12. Mississippi legal precedent recognizes two different classes of insureds. "Persons

4

included in Class I consist of the 'named insured, and residents of the same household, his spouse and relatives of either, while in a motor vehicle or otherwise.'" *Meyers v. Am. States Ins. Co.*, 914 So. 2d 669, 675 (¶15) (Miss. 2005) (quoting Miss. Code Ann. § 83-11-103(b) (Rev. 1999)). "Class II consist of 'any person who uses, with the consent, expressed or implied, of the named insured, the motor vehicle to which the policy applies.'" *Id*. (quoting Miss. Code Ann. § 83-11-103(b)). Insurance carriers are at liberty to define what constitutes "insured" more broadly if they so choose. *Pearthree v. Hartford Accident & Indem. Co.*, 373 So. 2d 267, 271 (Miss. 1979) (An insurer who "chose to define 'insured' more broadly under the explicit terms of the their policies . . . should not be permitted the benefit of any narrower definition employed by the statute.").

¶13.    For many years, whether drivers or passengers could stack insurance coverage was the subject of much litigation. "In 1971, this Court first permitted stacking of UM policies, holding that the uninsured motorists coverage of each policy is available to the injured insured until all sums which he shall be entitled to recover from the uninsured motorist have been recovered." *Glennon v. State Farm Mut. Auto. Ins. Co.*, 812 So. 2d 927, 930 (¶9) (Miss. 2002), *overruled by Meyers*, 914 So. 2d at 669 (citing *Harthcock v. State Farm Mut. Auto. Ins. Co.*, 248 So. 2d 456, 461-62 (Miss. 1971)). "Initially, stacking was only available to Class I insureds, but later [the Supreme] Court allowed a Class II insured to stack coverage under a standard family UM policy, where there had been two premiums paid on two vehicles, under a single policy." *Id*. at (¶10).

¶14.    The Supreme Court held in *Glennon* that Class II insureds were allowed to stack the

5

host vehicle's UM benefits provided that the coverages "being stacked were all contained in one policy." *Id*. at 932-33 (¶14). There, two employees were struck by another car while driving a vehicle owned by their employer. *Id*. at 929 (¶2). They then sued and "attempt[ed] to stack the UM coverage of their employer's three vehicles that were insured on three separate policies." *Id*. at 932 (¶14). However, because the vehicles were covered under separate policies, the employees were not permitted to stack. *Id*. at 932-33 (¶14).

¶15. The Court subsequently ruled in *Mascarella* that a Class II insured cannot stack the UM coverage of an employer's fleet policy. 833 So. 2d at 580 (¶13). In that case, an employee was also injured while driving his employer's car. *Id*. at 576 (¶2). The employee argued that "he should be entitled to 'stack' the UM coverage limits from all eight vehicles insured under" the employer's commercial policy to have the tortfeasor's vehicle qualify as underinsured. *Id*. at (¶4). The Supreme Court denied the request and held that "an injured insured may not stack the UM coverage of the other 'fleet' vehicles not involved in the accident to have a third-party tortfeasor's vehicle declared underinsured[.]" *Id*. at 580 (¶14).

### B. The Modern Approach in Meyers

¶16. In 2005, the Supreme Court established the current approach of our law in *Meyers*, 914 So. 2d at 675 (¶20). In *Meyers*, an employee was injured while driving his employer's car. *Id*. at 671 (¶1). The employee sued his employer's insurer and claimed he was entitled to stack the UM benefits of his employer's entire fleet of vehicles. *Id*. The fleet was insured under a commercial auto policy that "made no provision for or against uninsured motorist coverage." *Id*. at 676 (¶24). However, the employer had not signed a rejection of UM

6

coverage, so the Court wrote the statutory minimum into the policy.[1]  *Id*.  Because the

employer had not contracted for UM coverage or to allow stacking of UM benefits, the Court

found that the employee was limited to the statutory minimum construed into the policy.  *Id*.

at 676-77 (¶24).  To allow the employee to stack would go beyond the insurance coverage

for which the employer had contracted.  *Id*. at 677 (¶27).

¶17.    That decision overruled eleven earlier cases to the extent that those "decisions held

Class II insureds were *entitled* to uninsured motorist benefits beyond those for which a

named insured contracted[.]" *Id*. at 675 (¶20) (emphasis added).   In interpreting the

Uninsured Motorist Statute, the Supreme Court ruled insurers were now allowed to prohibit

stacking by Class II insureds.  *Id*. at 677 (¶26).

> ### C.      *Stacking Under the Uninsured Motorist Policy*

¶18.    Since its 2005 *Meyers* decision, the Mississippi Supreme Court has allowed insurance

contracts to prohibit stacking by a Class II insured like Brewer.  Even though allowed, by its

express terms the contract at hand contains no such anti-stacking provision for UM benefits.

¶19.    The relevant part of the policy, Part C - Uninsured Motorist Coverage, provides as

follows:

> 1.      Our maximum limit of liability for all damages, including damages for
> care, loss of services or death, arising out of bodily injury sustained by
> any one person in any one auto accident **is the sum of the limits of
> Bodily Injury Liability shown in the Declarations Per Person.** The
> Per Person limit includes, but is not limited to, derivative claims for
> loss of services, loss of consortium, bystander injury and mental
> anguish and emotional trauma sustained by others.

---

[1] "A rejection of uninsured motorist coverage must be done expressly in writing."
*Meyers*, 914 So. 2d at 676 (¶24) (citing Miss. Code Ann. § 83-11-101 (Rev. 2002)).

2. Subject to this limit Per Person, our maximum limit of liability for all damages arising out of bodily injury resulting from any one auto accident **is the sum of the limits of Bodily Injury Liability shown in the Declarations per auto accident.**

(Emphasis added).

¶20. In contrast to the UM subsection, the insurer did include anti-stacking provisions in other parts of the policy. Part A expressly stated, "The limits of liability for bodily injury and property damage provided by this policy *shall not be stacked, aggregated, pyramided or otherwise combined*." (Emphasis added). Likewise, Part B stated, "The Medical Payments Limit Per Person provided under this policy for Part B - Medical Payments Coverage and Death Indemnity Coverage *shall not be stacked, aggregated, pyramided or otherwise combined*." (Emphasis added). Furthermore, Farm Bureau repeatedly conceded the absence of an express provision prohibiting stacking of UM benefits at oral argument.

¶21. During oral argument, the insurer also emphasized that the Court should construe the policy as containing an express prohibition on stacking. However, "[t]his Court does not rewrite contracts where they are not illegal, immoral or contrary to established public policy." *Travelers Indem. Co. v. Chappell*, 246 So. 2d 498, 510 (Miss. 1971). If Farm Bureau wished to exclude stacking or UM benefits by passengers, it was permitted to do so by the Supreme Court under *Meyers*. Further, if Farm Bureau intended to exclude guest passengers from stacking UM benefits, it could have explicitly done so in the policy. Because it did not, we decline to rewrite the policy on its behalf. Accordingly, we find that the absence of an express prohibition on stacking allows Brewer to stack the UM benefits of the vehicles

8

insured under the same policy.[2]

¶22.    Farm Bureau relied on *Mascarella*, *Meyers*, and *Glennon* for its argument that state law prohibited Class II insureds from stacking UM benefits.  In contrast to the present case, "*Mascarella*, *Meyers*, . . . and *Glennon*[] only consider whether the injured party is an employee of the named insured or is the named insured."  *Alley v. N. Ins. Co.*, 926 So. 2d 906, 910 (¶10) (Miss. 2006).  Accordingly, these cases do not require us to reach a contrary result.

## CONCLUSION

¶23.    The Supreme Court allows insurers to include express anti-stacking provisions in policy contracts.  However, Farm Bureau did not include such a provision in this policy.  For this reason, we reverse the grant of summary judgment for Farm Bureau and remand this case for further proceedings consistent with this opinion.

¶24.    **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR.  WILSON, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., CARLTON, P.J., GREENLEE, LAWRENCE, McCARTY AND SMITH, JJ.; McDONALD, J., JOINS IN PART.**

**WILSON, P.J., SPECIALLY CONCURRING:**

---

[2] Furthermore, UM state law expressly allows insureds to purchase excess coverage. State law permits insurers to either narrow their liability by including expressed anti-stacking provisions within policies, or draft policies more broadly to include coverage in excess of statutory minimums.  Miss. Code Ann. § 83-11-111 (Rev. 2011) ("Any policy which grants the coverage required for motor vehicle liability insurance may also grant any lawful coverage in excess of, or in addition to, the coverage specified for a motor vehicle liability policy.").  And, "excess or additional coverage shall not be subject to the provisions of [the Uninsured Motorist Statute]."  *Id.*

¶25. I concur with the majority that nothing in the subject insurance policy issued by Mississippi Farm Bureau Casualty Insurance Company ("Farm Bureau") prevents Shelby Brewer from stacking the uninsured motorist coverage of all vehicles insured under the Farm Bureau policy for the specific purpose of determining the amount of recovery available to Brewer under the policy.[3] Indeed, stacking for that purpose is consistent with the language of the policy. Therefore, I also concur that the circuit court erred by granting summary judgment in favor of Farm Bureau. I write separately to emphasize a few points regarding the language of the subject policy and the caselaw on which Farm Bureau relies.

I. **The language of the subject policy permits Brewer to stack coverage to determine the amount of uninsured motorist benefits that she may recover under the policy.**

¶26. The underlying facts relevant to this appeal are undisputed. Shelby Brewer, a minor, was a guest passenger in a vehicle driven by Allison McLain and owned by Allison's father, David McLain. Allison and Brewer were involved in an accident with a vehicle driven by Autumn Brown, and Brewer suffered serious injuries and has incurred over $100,000 in medical expenses. Brown was at fault in the accident, but she had only $25,000 in liability coverage. Brewer was an insured under her parents' auto insurance policy, issued by Alfa Insurance Corporation, which provided $75,000 in uninsured motorist (or "UM") coverage to her. Alfa has tendered the policy limits to Brewer.

¶27. The vehicle that Allison was driving was one of four vehicles insured under a policy issued to the McLains by Farm Bureau. The issue in the appeal is the extent of uninsured

_____

[3] As discussed below, there is language in the policy that would prohibit stacking for the purpose of determining whether the at-fault driver was uninsured/underinsured.

10

motorist coverage available to Brewer under that Farm Bureau policy. Before addressing the specific coverage issue in this appeal, it is important to emphasize three important points regarding coverage that are not in dispute. *First*, there is no dispute that Brewer qualifies as an "insured" under the Farm Bureau policy, which provides in relevant part:

> **Insured** as used in **Part C-Uninsured Motorist Coverage** means:
>
> 1. [David McLain] or any **family member**; and
>
> 2. Any other person **occupying** any **covered auto** with permission of any **insured**.

¶28. *Second*, there is no dispute that Brown's vehicle was an "uninsured motor vehicle" under the Farm Bureau policy. In relevant part, the Farm Bureau policy states:

> **Uninsured motor vehicle** means a motor vehicle:
>
> . . . .
>
> 2. That is an underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle . . . for which the sum of the limits of liability under all **bodily injury** liability policies applicable at the time of the auto accident is less than the sum of:
>
>    a. The limit of liability for uninsured motorist coverage applicable to the vehicle the **insured** was **occupying** at the time of the auto accident; and
>
>    b. Any other limits of liability for uninsured motorist coverage applicable under policies affording uninsured motorist coverage to the **insured** as a named insured or **family member**.

Brown's vehicle is an uninsured/underinsured motor vehicle under this definition because the limit of liability under Brown's policy ($25,000) "is less than the sum of" (a) "[t]he limit of liability for uninsured motorist coverage applicable to the vehicle [Brewer] was occupying

11

at the time of the auto accident" ($25,000) and (b) the limit of liability for uninsured motorist coverage under the Brewer family's Alfa policy ($75,000).

¶29.    *Third*, because Brewer is an "insured" and Brown's vehicle was "uninsured," there also is no dispute that Brewer is entitled to uninsured motorist bodily injury coverage under the Farm Bureau policy.  The coverage provision states in relevant part:

> We will pay compensatory damages which any **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of:
>
> 1.    **Bodily injury** sustained by any **insured** and caused by an auto accident . . . .

¶30.    Thus, the only open issue in this appeal is the *amount* of uninsured motorist coverage available to Brewer under the Farm Bureau policy.  To answer that question, we must look for any relevant exclusions from coverage or limits of liability.  In this case, there are no relevant exclusions, and for purposes of this appeal, there is only one relevant limit of liability,[4] which provides as follows:

> **LIMIT OF LIABILITY**
>
> A.    With respect to the Bodily Injury Uninsured Motorist Coverage . . . :
>
> 1.    Our maximum limit of liability for all damages . . . arising out of **bodily injury** sustained by any one person in any one auto accident is the sum of the limits of Bodily Injury Liability shown in the Declarations Per Person. . . .

The declarations page of the policy shows limits of liability of $25,000 for uninsured motorist bodily injury coverage for each of the McLains' four covered vehicles.  Thus, the

_____

[4] Other liability limits may be relevant in this case, but only one is relevant to the specific issue in this appeal.

12

per-person limit of liability for uninsured motorist bodily injury coverage is $100,000, and Brewer argues that she is entitled to recover that amount under the Farm Bureau policy.

¶31.    In response, Farm Bureau argues that Brewer may recover no more than the limit of liability for the particular vehicle involved in the accident ($25,000).  Farm Bureau does not dispute that the applicable Limit of Liability establishes a per-person limit of liability of $100,000 for uninsured motorist bodily injury coverage.  Rather, Farm Bureau argues that the Limit of Liability "provision simply imposes a cap, or ceiling, on the amount Farm Bureau could ever owe for UM benefits under the policy."

¶32.    Farm Bureau is correct that this provision is only a maximum limit of liability and does not itself provide or extend coverage.  However, the operative coverage provision discussed above (*see supra* ¶29) is not limited and requires Farm Bureau to "pay compensatory damages which any **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of . . . [**b**]**odily injury** sustained by any **insured** and caused by an auto accident[.]"  Therefore, in the absence of *some* applicable limit, this means that Farm Bureau is required to pay Brewer for *all* compensatory damages resulting from bodily injuries that Brewer suffered.[5]  As Brewer correctly argues, the only applicable limit of liability in this case is the $100,000 per-person limit.

¶33.    Farm Bureau also argues that the Limit of Liability "does not . . . authorize Class II insureds" (such as Brewer) "to stack UM coverage on all vehicles insured under the policy." However, as Brewer argues, this provision clearly does contemplate "stacking" the limits of

_____

[5] For clarity, this again omits discussion of other limits of liability that may apply in the case but are not directly relevant to the issue in this appeal.

liability of all vehicles insured under the policy for the purpose of calculating the maximum per-person limit of liability under the policy. Furthermore, nothing in the Farm Bureau policy even mentions the concept of "Class II insureds." Certainly, there is nothing in the language of the Farm Bureau policy that prohibits Class II insureds from "stacking" for purposes of determining the amount of UM benefits available to them under the policy. Accordingly, under the plain language of the Farm Bureau policy, Brewer is entitled to recover up to $100,000 of UM benefits for her bodily injuries.

II.     **Mississippi law does not forbid stacking for the purpose of determining the amount of uninsured motorist benefits that Brewer may recover under the policy.**

¶34.    Ultimately, Farm Bureau can point to nothing in the language of its policy that would limit Brewer's recovery under the policy to $25,000. Rather, Farm Bureau argues that Mississippi caselaw mandates that such a limitation must be read into the policy.

¶35.    Setting aside any other issues with Farm Bureau's argument, the cases on which it relies do not address the specific issue in this appeal. The cases that Farm Bureau cites "deal[] with stacking *for the purposes of determining uninsured status*." Jeffrey Jackson & Jason Childress, *Mississippi Insurance Law and Practice* § 18:20, at 582 (2020 ed.) (emphasis added). In this case, as discussed above, there is no dispute that Brown's vehicle was uninsured (i.e., underinsured) under the Farm Bureau policy. The only issue in this appeal is whether Brewer may stack the coverage limits for the four vehicles covered by the policy *for the purpose of determining the amount of recovery*. Our Supreme Court has made clear that these two issues are separate and distinct. *Mascarella v. U.S. Fid. & Guar. Co.*,

14

833 So. 2d 575, 576-77 (¶5) (Miss. 2002). Furthermore, the distinction is important in a case such as this one because "[t]he rules for stacking for the purposes of recovery differ from the rules for stacking for the purposes of determining uninsured status." Jackson & Childress, *supra*, § 18:20, at 582.

¶36. Mississippi caselaw under the uninsured motorist statutes establishes a default rule that "for the purposes of determining whether a motorist is underinsured, a guest passenger may not stack her host's coverage on vehicles not involved in the accident." *Id.* § 18:24, at 587. The language of the Farm Bureau policy at issue in this case is consistent with this general rule. *See supra* ¶28. Therefore, Brewer is not entitled to stack the coverage limits on all four vehicles insured under the Farm Bureau policy for the purpose of establishing that Autumn Brown's vehicle is underinsured. However, as discussed above, Brown's vehicle qualifies as an underinsured vehicle without such stacking because the liability limit on Brown's vehicle is less than the sum of other uninsured motorist coverages applicable to Brewer. *See supra* ¶28. Accordingly, the general rule against stacking for the purpose of determining uninsured/underinsured status does not bar Brewer's claim.

¶37. When, as in this case, a guest passenger, "stacking other applicable coverage, can demonstrate the tortfeasor was underinsured," the guest passenger "will be able to recover UM benefits from all vehicle coverages *including the coverage on the separate vehicles of the host driver not involved in the accident.*" Jackson & Childress, *supra*, § 18:24, at 587 (emphasis added). Our Supreme Court summarized this rule in *Fidelity & Guaranty Underwriters Inc. v. Earnest*, 699 So. 2d 585 (Miss. 1997):

15

[O]ur State's UM law . . . establish[es] a more liberal standard with regard to the amount of recovery available to a UM insured than for determining initial eligibility for UM benefits. In *Thiac v. State Farm Mut. Auto. Ins. Co.*, 569 So. 2d 1217, 1220 (Miss. 1990), this Court held that, for purposes of determining whether a given vehicle is underinsured, "we look no further than the guest passenger's own coverage and the coverage on the host vehicle." This Court in *Thiac* reaffirmed an earlier holding in *Wickline* [*v. United States Fidelity & Guaranty Co.*, 530 So. 2d 708 (Miss. 1988)], however, that, once a given vehicle is determined to be underinsured, the amount of recovery available to the insured is determined by stacking not only the guest passenger's coverage and the coverage on the host vehicle, but also other vehicles covered by the host's policy. *Thiac*, 569 So. 2d at 1220-21. This Court's decision today thus establishes a more liberal "fund" for recovery by a UM plaintiff who has met the statutory UM eligibility requirements in a manner similar to that adopted by this Court in *Wickline/Thiac*.

*Earnest*, 699 So. 2d at 590 (¶19).

¶38.     Subsequently, in *Meyers v. American States Insurance Co.*, 914 So. 2d 669 (Miss. 2005), the Supreme Court "overruled" *Wickline* and *Thiac*—but only "[t]o the extent [those cases] held Class II insureds were entitled to uninsured motorist benefits beyond those for which a named insured contracted." *Meyers*, 914 So. 2d at 675-76 (¶20).  According to *Meyers*, this made "explicit[]" what the Court's prior "holding in *Mascarella*," *supra*, had "implied." *Meyers*, 914 So. 2d at 675 (¶20).[6]   However, *Meyers* did not overrule *Earnest*

---

[6] The holding in *Mascarella*, in response to a certified question from the United States Court of Appeals for the Fifth Circuit, was simply that an employee injured in an auto accident could not stack the uninsured motorist coverage of other vehicles insured by his employer (the named insured) in order "to have a third-party tortfeasor's vehicle declared underinsured." *Mascarella*, 833 So. 2d at 580 (¶14).  In *Mascarella*, the Court stated that the certified question did not encompass the distinct issue of whether "an insured who was injured by an underinsured vehicle can stack the UM coverage limits of all the vehicles covered by the policy to allow for full recovery of damages." *Id.* at 579 (¶11).

16

or the rule summarized above.[7]

¶39.    Moreover, in *Mascarella*, the Supreme Court reaffirmed—albeit in dicta—that a guest passenger may stack coverage on other vehicles insured under the host's policy for the purpose of determining the amount of recovery. *Mascarella*, 833 So. 2d at 579 (¶11). The policy in *Mascarella* included a limit of liability similar to the Limit of Liability in the Farm Bureau policy in this case. *Id.* The Supreme Court stated that such a provision "clearly" shows that "an insured who was injured by an underinsured vehicle can stack the UM coverage limits of all the vehicles covered by the policy to allow for full recovery of damages." *Id.* The Court also stated that that specific stacking issue was not before the Court because the case "involve[d] only the threshold question" whether the insured could stack coverage in order "to have the tortfeasor's vehicle declared underinsured." *Id.* at (¶12).

¶40.    Thus, although our Supreme Court's precedents do make clear that a guest passenger does not have a statutory right to stack coverage for the purpose of determining uninsured/underinsured status, those cases do not prohibit stacking for the purpose of determining the amount of UM coverage that is available in a case in which uninsured/underinsured status has been established. Furthermore, *Earnest* has not been overruled and expressly holds that such stacking is permissible, and *Mascarella* indicates, albeit in dicta, that the rule stated in *Earnest* is still good law. Therefore, we should simply

---

[7] *See* Jackson & Childress, *supra*, § 18:20, at 582 ("The rules for stacking for the purposes of recovery differ from the rules for stacking for the purposes of determining uninsured status. It remains to be seen whether the [Supreme Court's] limitation on Class II stacking on the front-end for the purposes of determining uninsured status will also have an impact on back-end stacking for the purposes of recovery.").

17

apply the plain language of the policy at issue. The language of the Farm Bureau policy in this case provides Brewer with up to $100,000 in uninsured motorist bodily injury coverage, and as relevant to this appeal, the policy does not impose any additional limit on that coverage. For that reason, I concur that the circuit court erred by granting Farm Bureau's motion for summary judgment.

**BARNES, C.J., CARLTON, P.J., GREENLEE, LAWRENCE, McCARTY AND SMITH, JJ., JOIN THIS OPINION. McDONALD, J., JOINS THIS OPINION IN PART.**